**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 493 CAP |
| | : |
| Appellee | : Appeal from the Order of the Court of |
| | : Common Pleas of Philadelphia County, |
| | : Criminal Division, entered on October 18, |
| v. | : 2005 at No. 9611-0316 1/2 |
| | : |
| | : SUBMITTED FOLLOWING REMAND: |
| RASHEED SIMPSON, | : August 13, 2014: |
| | : |
| Appellant | : |

**OPINION**

**MADAME JUSTICE TODD**                    **DECIDED:  March 25, 2015**

In this Opinion, our Court addresses three issues over which we retained jurisdiction following a remand to the Post Conviction Relief Act ("PCRA")[1] court on March 26, 2013 for further proceedings, as warranted, and for the preparation of an opinion.  Commonwealth v. Simpson, 66 A.3d 253 (Pa. 2013).  The questions on remand involved two allegations of ineffective assistance of trial counsel.  The PCRA court, after holding a hearing on February 21, 2014, rendered an opinion in which it resolved these issues against Appellant Rasheed Simpson, and, thus, denied him relief. With the remand proceedings now complete, we now may also consider the issue of whether Appellant is entitled to relief based on the cumulative prejudicial effect of all of

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

the alleged errors he has set forth. For the reasons that follow, we hold that the PCRA court properly resolved the ineffectiveness claims before it, and we conclude that Appellant is not entitled to relief on his claim of cumulative prejudice. Thus, we affirm the order of the PCRA court and dismiss all of Appellant's claims.

By way of brief background, in December 1997, as a result of the 1993 kidnapping and execution-style murder of Andrew Haynes, Appellant was convicted of first-degree murder, criminal conspiracy, kidnapping, robbery, and possession of an instrument of crime. Thereafter, a jury sentenced Appellant to death. Our Court affirmed the judgment of sentence on direct appeal. Commonwealth v. Simpson, 754 A.2d 1264 (Pa. 2000). On September 17, 2001, Appellant filed a *pro se* petition pursuant to the PCRA. The PCRA court dismissed Appellant's claims without a hearing on October 18, 2005. On appeal to our Court, Appellant raised 15 issues. On March 26, 2013, we affirmed the PCRA court's order with the exception of two issues involving trial counsel's alleged ineffectiveness regarding a failure to cross-examine Commonwealth witness Rasheema Washington and to present potential defense witness Cameron Thompson. See Simpson, 66 A.3d at 284. We remanded these two claims to the PCRA court for further proceedings.[2]

In light of the retirement of the PCRA judge, upon remand, the matter was reassigned to the Honorable Glenn Bronson who, after Appellant was appointed new counsel and was granted a continuance, held an evidentiary hearing on February 21,

---

[2] Specifically, our Court remanded to "hold a hearing, if necessary, and draft an opinion, complete with findings of facts and conclusions of law to enable our review of: (1) the allegations concerning trial counsel's ineffectiveness for failure to impeach Ra[s]heema Washington with evidence of motive and bias against Appellant; and (2) the allegations concerning counsel's failure to present Cameron Thompson as a witness and use information from Thompson regarding Washington's testimony concerning Appellant's presence at a movie theater on December 16, 1993." Simpson, 66 A.3d at 272.

2014. In a thorough and well-written opinion, the PCRA court determined that Appellant was not entitled to relief. These issues, as well as the related question of cumulative prejudice, are now properly before our Court for final disposition.

As Appellant challenges the effectiveness of trial counsel, a brief summary of the legal framework governing PCRA petitions raising such claims is appropriate. As noted in our prior decision, Appellant was represented by the same counsel both at trial and on direct appeal, and, thus, did not have an opportunity to raise claims of trial counsel's ineffectiveness on direct appeal. Simpson, 66 A.3d at 260. In this context, the proper framework in which to consider Appellant's issues is the "performance and prejudice" analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984), and Commonwealth v. Pierce, 527 A.2d 973, 975 (Pa. 1987). Pursuant to guarantees found in the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution, a defendant is entitled to the right to effective counsel. This right is violated where counsel's performance "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Commonwealth v. Rios, 920 A.2d 790, 799 (Pa. 2007) (internal quotation marks omitted). In Pennsylvania, courts apply a three-pronged test for analyzing whether trial counsel was ineffective, derived from our application in Pierce, 527 A.2d at 975, of the performance and prejudice test articulated by the United States Supreme Court in Strickland, 466 U.S. at 687. The Pierce test requires a PCRA petitioner to prove: (1) the underlying legal claim was of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) the petitioner was prejudiced — that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different. Pierce, 527 A.2d at 975. If a petitioner is

unable to prove any of these prongs, his claim fails. Commonwealth v. Williams, 936 A.2d 12, 19-20 (Pa. 2007).

Importantly, counsel is presumed to be effective, and a petitioner must overcome that presumption to prove the three Strickland/Pierce factors. Commonwealth v. Singley, 868 A.2d 403, 411 (Pa. 2005). Related thereto, where, such as in the matter *sub judice*, trial counsel is deceased, and, thus, unavailable to testify, the petitioner's burden of establishing a claim of ineffective assistance of counsel is not lessened or reduced. Commonwealth v. Steele, 961 A.2d 786, 820 (Pa. 2008). Additionally, and relevant to both issues before us, to obtain relief for counsel's failure to effectively impeach a witness, a petitioner must satisfy the three-pronged test set forth in Pierce. Furthermore, regarding the failure to procure a witness's testimony, a petitioner must demonstrate: (1) the witness existed; (2) counsel was either aware of, or should have been aware of, the witness' existence; (3) the witness was willing and able to cooperate with the defense; and (4) the defendant was prejudiced by the absence of the witness' testimony. See Commonwealth v. Bryant, 855 A.2d 726, 746 (Pa. 2004).

Finally, our Court has embraced a *de novo* standard of review in determining whether counsel's performance fell below constitutional mandates, but significantly, for purposes of this appeal, we have emphasized that the lower tribunal's factual findings and credibility determinations which are supported by the record will not be disturbed on appeal. Commonwealth v. Spotz, 84 A.3d 294, 311, 319 (Pa. 2014). With this framework in mind, we turn to the issues before us.

The first claim which we remanded to the PCRA court for supplemental review was whether trial counsel was ineffective for failing to impeach Rasheema Washington — who was the only eyewitness who testified as to the events surrounding the kidnappers bringing the murder victim to her apartment, Appellant's presence with the

victim that evening, and his presence during a telephone conversation with the victim's family — with evidence of motive and bias against Appellant. In sum, Appellant contends that his trial counsel knew that Washington had been in a sexual relationship with Appellant, accused him of impregnating her and infecting her with a sexually transmitted disease, and that she claimed that she would get back at him someday; that counsel failed to cross-examine Washington on the basis of this evidence; and that, had counsel properly cross-examined Washington, her impeachment would have resulted in his acquittal.

At the evidentiary hearing held by the PCRA court on remand, Cameron Thompson testified that Washington had told him that she was pregnant and believed Appellant was the father. Further, Thompson relayed that Washington was obsessed with Appellant, hated him, and wanted to get him killed. Appellant also testified at the hearing and, consistent with Thompson, explained that Washington accused him of giving her a sexually transmitted disease and that she swore she would get back at him. Additionally, when Washington told Appellant that she was pregnant with his child, and Appellant advised her to get an abortion, Washington allegedly broke down and was upset that he did not want to father a child by her. When Washington discovered that Appellant had a son by another woman, Appellant offered that she stated, "I swear you going' [sic] pay for what you did to me one day." N.T., 2/21/14, 67. Furthermore, Appellant testified that he told trial counsel of Washington's bias and motive to lie, and that counsel should call Thompson as a witness. Finally, Appellant claimed that trial counsel informed him that Thompson was not pursued as a witness as there was no money for an investigator to locate him.[3]

---

[3] Before the PCRA court, the Commonwealth filed a motion to dismiss, contending, *inter alia*, that Appellant's claim of ineffective assistance of counsel was based upon inadmissible hearsay, i.e., what Thompson heard from others, and that Appellant could (continued…)

The Commonwealth presented Washington at the remand hearing. Washington acknowledged that she had a sexual relationship with Appellant, but explained that it had ended by November 1992, before the 1993 murder at issue in this case, and years before her testimony against Appellant at his 1997 trial. Indeed, Washington stressed that, at the time she gave a statement to police inculpating Appellant, she was in a romantic relationship with her daughter's father, "Malik,"[4] and had no romantic interest in Appellant. Washington offered that she was not angry with Appellant and did not threaten him or hope that he would die. Further, she denied being pregnant with Appellant's child and maintained that she never told him that she was pregnant by him or that she suffered from a sexually transmitted disease due to sexual relations with Appellant. Finally, Washington explained that she delayed providing information to the police as co-defendant Malik Bowers (a different person than her boyfriend Malik) was very close to her and she did not want to incriminate him.

As noted above, trial counsel, Bernard Siegel, passed away prior to the PCRA hearing; he left no prior testimony or statements regarding the matters at issue in this appeal. Both parties, however, offered into evidence certain notes contained in counsel's files. As stated by the PCRA court, the first note, dated September 12, 1996, and memorializing a conversation with Appellant, offered that "[Washington] is a friend

_____

(…continued)
not show prejudice, as, according to the Commonwealth, both Appellant's counsel, and co-defendant Malik Bower's counsel, vigorously cross-examined Washington. Similarly, the Commonwealth argued that trial counsel was not ineffective in failing to present Thompson to rebut Washington's testimony that defendant was in the vehicle with co-defendant Bowers when police found the weapon in the car. Finally, the Commonwealth maintained that Appellant was not entitled to an evidentiary hearing. The PCRA court denied the Commonwealth's motion and resolved the matter on the merits after a hearing.
[4] Malik's last name is not disclosed in the record.

of both [defendants] but is afraid - she might be in an accomplice position and should be made aware of her potential involvement." PCRA Opinion, 8/7/14, at 8 (quoting Commonwealth Exhibit C-3); see also N.T., 2/21/14, at 92-95. Related thereto, the PCRA court set forth trial counsel's note dated November 9, 1997:

> [Appellant] and Rasheema [Washington] were intimate - she gave him gonorrhea a few times - has a dtr [daughter] that may be his; has been intimidated by her - when she was pregnant she told him was his several times - she was upset when they broke up - started in 1992 and broke up in 1993 or 1994. - if confronted, she might get real out of control.

PCRA Opinion, 8/7/14, at 8 (quoting Commonwealth Exhibit D-1); see also N.T., 2/21/14, at 72-75. Also introduced at the hearing were letters in which Appellant seemingly expressed satisfaction with trial counsel's representation, despite Appellant's convictions. Finally, the parties introduced contrasting evidence concerning trial counsel's abilities, with the Commonwealth offering that counsel was the former president of the Pennsylvania Association of Criminal Defense Lawyers and co-chair of the Capital Litigation Training Committee of that association and Appellant introducing trial counsel's public censure in 2010 for negligent acts in 2007 and 2008.

On remand, the PCRA court rejected Appellant's claim of ineffective assistance of counsel. Specifically, the PCRA court credited the testimony of Washington which established that her sexual relationship with Appellant ended by November 1992; that she was not pregnant with Appellant's child; that she did not threaten Appellant; that she did not have a sexually transmitted disease; and that she did not tell anyone that Appellant gave her a sexually transmitted disease. The court reasoned that her testimony was further boosted by Appellant's trial counsel's September 12, 1996 note in which he recorded that Appellant described Washington as a friend and a potential witness. Conversely, the PCRA court found Thompson's testimony to be incredible and

that it was fabricated to aid Appellant. Further, the court concluded that Thompson was never proffered to trial counsel and that counsel had no reason to believe Thompson would be useful as a witness. Similarly, the PCRA court determined that Appellant's testimony, including the above allegations of bias and revenge on the part of Washington, was not credible. The PCRA court, however, did find that Appellant, 14 months after describing Washington as a friend, and one month prior to trial, did tell his trial counsel that he had engaged in sexual relations with Washington and had given Appellant a sexually transmitted disease, that Washington had a daughter that might be his, that Washington told Appellant the child was his, and that she was upset when their relationship ended.

Thus, the PCRA court initially concluded that there was no factual basis for Appellant's assertions. Further, the PCRA court determined that, because trial counsel died, the reason for his not confronting Washington at trial would never be expressly established. The court opined, however, that trial counsel may have refrained from challenging Washington as he had no extrinsic evidence to corroborate Appellant's allegations or because Appellant had initially informed counsel that Washington was a friend and possible defense witness. The court further reasoned that an uncorroborated attack on a witness involving her sexual practice, venereal disease, abortion, and related matters certainly could have offended jurors. Moreover, the court stressed that Appellant proffered no evidence that would establish that trial counsel's actions had no reasonable basis.

Additionally, the PCRA court determined that Appellant failed to establish he was prejudiced by trial counsel's failure to cross-examine Washington regarding her alleged bias. The court explained that, if Washington had credibly testified at trial, as she did at the PCRA hearing, without any extrinsic evidence to contradict Washington, there was

not a reasonable basis that challenging Washington's testimony would have affected the outcome of the trial. According to the court, the fact that Appellant did not ask trial counsel to call Thompson as a witness is corroborated by Appellant's repeated assertions of satisfaction with counsel's representation. Related thereto, the PCRA court reviewed the evidence presented against Appellant, including confirmation of Appellant as the kidnapper and murderer by witnesses other than Washington, and stressed the minimal value that any cross-examination of Washington would have had concerning the outcome of the trial.

Thus, based upon its credibility determinations of the testifying witnesses, including Appellant, the PCRA court not only found Appellant's claims lacking in factual foundation, but also concluded that Appellant failed to establish trial counsel had no reasonable basis for failing to challenge Washington at trial with such information and the testimony of Thompson, and that Appellant suffered no prejudice by counsel's failure to cross-examine Washington.

Turning to the arguments of the parties,[5] Appellant initially holds up the uncredited testimony of Thompson and Appellant as a basis for granting him relief, challenges Washington's testimony as incredible, and stresses the criticality of Washington's testimony to the Commonwealth. He goes on to claim that it is not for the court to decide the effect that a witness' testimony may have had on the jury if that

---

[5] The parties have not filed briefs with our Court at this juncture. However, Appellant and the Commonwealth filed various pleadings both before and after the PCRA court's February 21, 2014 remand hearing. The arguments of the parties set forth below are a compilation and summary of the arguments set forth in these pleadings. See Commonwealth's Motion to Dismiss, 7/10/13; Petitioner's Reply to the Commonwealth's Motion to Dismiss Petitioner's Post Conviction Relief [sic], 10/5/13; Petitioner's Post Hearing Argument, 5/8/14; Commonwealth's Letter Response to Post Hearing Argument, 6/6/14; Commonwealth's Post-Hearing Brief, 5/21/14; and Petitioner's Reply to the Commonwealth's Post Hearing Brief, 6/3/14.

witness had been called to testify, but that matters of credibility are left for the fact finder — in this case, the jury. Thus, Appellant stresses that Washington's credibility is not relevant to whether trial counsel was ineffective for failing to call Thompson to testify or failing to impeach Washington at trial with the information regarding her bias against Appellant. Rather, according to Appellant, what is important is that Appellant told trial counsel prior to trial that Washington's testimony could be impeached with Thompson's testimony, yet counsel failed to investigate and impeach Washington with Thompson's testimony. Appellant further asserts that trial counsel informed him that he did not have funds to pay for a private investigator, but argues that such investigation would cost nothing. Additionally, Appellant offers as relevant to the inquiry that trial counsel negligently handled cases in 2007 and 2008.

In the alternative, Appellant submits that Washington's testimony is not credible because: she delayed telling the police of the events surrounding the murder; she must have had feelings towards Appellant as she engaged in sexual relations with him multiple times; if she lied at trial, she could have been charged with perjury; the truth would have presented problems with her children's father; and Washington had a pattern of changed stories regarding the incident. Appellant also explains that he did not tell trial counsel about his turbulent relationship with Washington months before trial, but instead described her as a friend and possible witness earlier, because he was surprised to learn at trial that Washington was incriminating him and that he had been trying to protect her from involvement as an accomplice. Thus, according to Appellant, upon learning that Washington was lying to police, he realized the importance of divulging to counsel the full scope of his relationship with Washington and her motivation to incriminate him. Finally, Appellant maintains that he was prejudiced by trial counsel's ineffectiveness, as, had counsel presented Thompson's testimony at trial,

he would have been able to paint a different picture of Washington and, due to counsel's ineffectiveness, the jury was prevented from hearing anything about their troubled relationship and her possible motive and bias against him.

In response, the Commonwealth initially argues that Thompson's proffered testimony is inadmissible hearsay and cannot serve as the basis for relief. Further, the Commonwealth highlights the PCRA court's crediting of Washington's testimony that she harbored no ill feelings towards Appellant; that their relationship had ended well before the night of the murder; that she did not accuse Appellant of fathering her child or giving her a sexually transmitted disease; and that she never threatened him or vowed to retaliate against him. Additionally, the Commonwealth offers that Washington did not seek out the police after the victim was murdered because: she considered Appellant's co-defendant Malik Bowers to be family and did not want to implicate him; she was worried that she would be implicating herself in the crime, as the kidnappers brought the victim to her apartment; and she was afraid of what would happen to her on the streets if she went to the police and told them all that she knew. Further, the Commonwealth asserts that our Court has made it clear that the PCRA court may pass on witness credibility at a PCRA hearing, and that such determinations should be given great deference by reviewing courts. Commonwealth v. Johnson, 966 A.2d 523, 539 (Pa. 2009). Here, the Commonwealth maintains it was necessary for the PCRA court to pass on the credibility of Washington, as well as Thompson and Appellant, in determining whether trial counsel was ineffective for failing to impeach Washington's testimony, and most importantly, whether Appellant was prejudiced by counsel's not confronting Washington. Indeed, the Commonwealth stresses it was proper for the PCRA court to find Appellant's assertions incredible, as only after Appellant learned that

Washington was incriminating him in the murder did he convey their troubled relationship to counsel and suggested a motive for Washington to lie.

In any event, the Commonwealth contends Appellant failed to establish prejudice, as Washington was vigorously cross-examined by counsel for Appellant and counsel for co-defendant Bowers at trial. Related thereto, the Commonwealth submits that, in light of the compelling evidence of Appellant's guilt, Appellant cannot show a reasonable probability that the verdict would have been different had trial counsel questioned Washington regarding her purported bias and motive to lie. Specifically, the Commonwealth emphasizes Aloyisius Stanley Hall's testimony that the kidnapper who spoke with him on the telephone and who referred to the earlier robbery of Hall responded affirmatively when asked if it was "Rasheed" on the line, and threatened to kill the victim if the kidnappers did not received $20,000 in 15 minutes. According to the Commonwealth, even if trial counsel had cross-examined Washington with her alleged bias against Appellant — in which case Washington would have denied having any vendetta against Appellant as she did during the PCRA court hearing — Appellant cannot demonstrate a reasonable probability that the jury would have acquitted him of the victim's murder.

Upon review, we conclude that the PCRA court's factual findings are supported by the record, its conclusions are free from legal error, and so its denial of relief was appropriate. First, we find that the record amply supports the court's finding that Washington credibly testified that she was not biased against Appellant and, *inter alia*, did not communicate to Appellant that she was pregnant with Appellant's child, that Appellant had given her a sexually transmitted disease, or that she would seek revenge against him. Further, we find that the PCRA court's legal conclusions regarding Appellant's claim of ineffectiveness are free from legal error. Specifically, while

Appellant claims that the credibility of Washington's testimony is for the jury, and not the PCRA court, he misunderstands the import of the court's role in making credibility determinations. Beyond resolving the veracity of the underlying factual foundation for the claim, Washington's credibility goes to the question of prejudice. The PCRA court's finding that Washington credibly testified strongly supports its conclusion that Appellant failed to meet his burden of establishing that, but for the ineffectiveness of trial counsel, the outcome of the proceedings would have been different. As noted by the PCRA court, there was significant other evidence in the form of Hall's testimony that Appellant was the murderer. Moreover, the court rightfully stressed the minimal value that any cross-examination of Washington would have had concerning the outcome of the trial, even if trial counsel had cross-examined Washington with her alleged bias against Appellant, as Washington would have credibly denied having any vendetta or bias against Appellant, as she did during the PCRA court hearing.

As to Appellant's claim that trial counsel failed to call Thompson as a witness to rebut Washington's testimony, the PCRA court found that Thompson was never proffered as a witness to trial counsel and that counsel had no reason to believe that he would be helpful as a witness. This credibility determination by the PCRA court in disbelieving Appellant's assertions is supported by the record. Thus, on this basis alone, Appellant's claim that counsel was ineffective for failing to present Thompson as a rebuttal witness does not entitle him to relief, as he fails to satisfy the reasonable basis prong of the Pierce test — i.e., that counsel had no reasonable strategic basis for his inaction. In any event, there is no reasonable likelihood that the outcome of the proceedings would have been different with Thompson's testimony, as the court found his testimony to be incredible and fabricated to assist Appellant, who was his longtime friend. Thus, we agree with the PCRA court, with respect to both of Appellant's

allegations of ineffective assistance of counsel, that he failed to meet the Pierce prejudice prong — i.e., he did not demonstrate to a reasonable probability that the jury would have acquitted him of the victim's murder had trial counsel cross-examined Washington with her alleged bias against Appellant and had offered Thompson as a witness.

We now turn to Appellant's allegations concerning trial counsel's failure to present Thompson as a witness and use information from Thompson to undermine Washington's testimony concerning Appellant's presence at a movie theater after the murder on December 16, 1993.

By way of background, one week after Hayne's murder, Montgomery County Police Officer James Slavin investigated a vehicle which lacked a license plate in the parking lot outside a movie theater in the Cheltenham Mall in Cheltenham, Pennsylvania, and in doing so, observed a firearm under the seat of the car. Officer Slavin and other officers waited for the return of the individuals to the vehicle, and confronted them upon their return. Officer Slavin's notes of the incident identified the members of the returning party as co-defendant Bowers, Washington, Thompson, Will Shepard, and the driver, Medeya Clark. Bowers refused to cooperate with officers and was subsequently arrested.

Washington testified that Appellant was one of the individuals present, and not Shepard. Washington not only testified that Appellant was a passenger in the car, but that Appellant had the firearm in his possession before the group exited the vehicle to go to the movies. Although it could not be confirmed that the gun was the murder weapon, the evidence was proffered to establish that Appellant was found with his alleged co-conspirator Bowers in possession of a firearm shortly after the murder.

At the PCRA hearing on remand, Thompson testified that he was a passenger in the vehicle at the movie theater parking lot on the night in question and that Appellant was not present. Thompson further stated that Washington and Sheppard had been hugging and kissing that evening at the movies. Appellant also testified, denying that he was at the movie theater that night, and explained that he asked trial counsel to find Thompson and call him as a witness to contradict Washington's testimony that Appellant was in the car when Bowers was arrested for possession of the firearm. Washington testified to the contrary, explaining that Appellant was in the car as a passenger, was present at the time of the arrest, and was in possession of a firearm before the party left the parking lot to go to the movies.

The PCRA court determined that neither Thompson nor Appellant testified credibly regarding the events at Cheltenham Mall and that their testimony was refuted by the credible testimony of Washington. Likewise, the PCRA court found that Appellant did not ask trial counsel to call Thompson as a witness and that counsel had no reason to call him to testify. Thus, the court concluded that Appellant's claim that trial counsel was ineffective for failing to call Thompson as a witness regarding Appellant's presence and possession of a firearm in the parking lot outside of a movie theater lacked arguable merit, as Appellant failed to adduce any factual basis for his claim.

Appellant offers that Washington was the only witness to place Appellant with Bowers at the parked car in which a firearm was located, as well as at the scene of the crime, and, thus, her testimony was central to the Commonwealth's obtaining Appellant's conviction. According to Appellant, had Thompson testified at trial, he would have directly rebutted Washington's testimony. Specifically, Appellant offers that Thompson's testimony that Appellant was not among the individuals in the vehicle in the

mall parking lot was corroborated by Officer Slavin, who indicated that Appellant was not present, but that Thompson and Sheppard were part of the group of individuals in the vehicle. Appellant also offers that Thompson testified that Washington and Sheppard had been kissing the night they went to the movies and that it was Thompson's opinion that Washington was protecting Sheppard, who Appellant suggests was the actual murderer, and, further, that it was Sheppard who threw the firearm on the floor of the vehicle when police approached.

Appellant also criticizes counsel for failing to seek a continuance so that he could investigate rebuttal evidence, if it was unclear until Washington testified that Appellant had been in the car with the gun at Cheltenham Mall. Appellant contends that, even if trial counsel had no funds for investigation, it would have cost virtually nothing to telephone Thompson or to subpoena him. Appellant maintains that trial counsel had no reason not to investigate and present Thompson's testimony at trial. With regard to prejudice, Appellant submits that, without the impeaching evidence, the jury was not able to arrive at an informed determination as to Washington's credibility, which, according to Appellant, was the critical link to the Commonwealth's evidence. Moreover, Appellant offers trial counsel's negligent handling of cases in 2007 and 2008, which resulted in a public censure, as further evidence of his ineffectiveness.

The Commonwealth stresses that Appellant presented nothing to establish that he ever asked trial counsel to call Thompson to testify at trial. Nothing in counsel's file, according to the Commonwealth, indicates such a request, and numerous times during both the guilt and penalty phase Appellant indicated that he was satisfied with counsel's representation. In any event, the Commonwealth argues that Thompson's testimony was incredible, as he had been a friend of Appellant's family for nearly 30 years, came forward eight years after his friend Appellant was convicted of murder, and that it would

not be surprising for Appellant, who was a fugitive in a murder case, to offer a fake name — "Will Shepard" — when confronted by police. Further, the Commonwealth adds that there was already evidence rebutting Washington's assertions offered at trial in the form of Officer Slavin's notes, which indicated that Appellant was not present with the others outside the movie theater. The Commonwealth submits that, in light of trial counsel's passing, his extensive experience as a capital criminal defense attorney[6] is highly relevant and casts doubt upon Appellant's claims of ineffectiveness. Finally, the Commonwealth urges that, in light of the overwhelming evidence of guilt presented at trial, including Washington's testimony regarding the murder, Appellant has failed to establish the outcome of the trial would have been different if Thompson had testified regarding Appellant's absence from the events at Cheltenham Mall a week after the murder.

Upon review, we conclude that the PCRA court's factual findings are supported by the record and its denial of relief was proper. First, the PCRA court rejected as incredible that Appellant requested trial counsel to call Thompson as a witness and that he was prejudiced by counsel's failure to call him. Except for his self-serving assertions, Appellant presented nothing to substantiate his claim that he asked counsel to call Thompson as a witness. Giving deference to the PCRA court's credibility determinations as we must, we find Appellant failed to meet his burden of establishing that trial counsel knew or should have known that Thompson existed as a witness, and, thus, did not satisfy the reasonable basis prong of the Pierce test. On this basis alone, Appellant is not entitled to relief.

---

[6] As noted above, the Commonwealth highlights counsel's achievements as former president of the Pennsylvania Association of Criminal Defense Lawyers and co-chair of the Capital Litigation Training Committee of that association.

Moreover, the PCRA court credited Washington's testimony regarding the events of December 16, 1993 at the Cheltenham Mall, and found Appellant and Thompson's testimony concerning that night to be incredible. Thus, there was not only a lack of factual foundation for Appellant's claim, as found by the PCRA court, but we also conclude Appellant failed to establish prejudice, as the outcome of the trial would not have been different even if the jury had heard Thompson's testimony regarding the tangential events of December 16 — that Appellant was not in the car a week after the murder when the police found a gun that could not be identified as the murder weapon. In light of the factual support for these findings and our deferential standard in reviewing credibility determinations of the PCRA court, we conclude Appellant is not entitled to relief.

Having resolved both remand claims, as well as previously resolving all of Appellant's substantive issues raised on appeal, we are now able to address Appellant's last claim that, even if our Court determines he is not entitled to relief based on the prejudicial effect of any single error, he is nevertheless entitled to relief due to the cumulative prejudicial effect of all of the errors he has set forth. It is well established that no number of failed ineffectiveness claims may collectively warrant relief if they do not do so individually. Commonwealth v. Johnson, 966 A.2d 523, 532 (Pa. 2009). Yet, when the failure of individual claims is based upon a lack of prejudice, the cumulative prejudice arising from those individual claims may properly be considered. Commonwealth v. Koehler, 36 A.3d 121, 161 (Pa. 2012); Commonwealth v. Sepulveda, 55 A.3d 1108, 1150 (Pa. 2012) ("if multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation" (internal quotation marks omitted)).

As noted in our earlier opinion, we previously resolved four issues solely on the grounds of lack of prejudice. These claims were that trial counsel was ineffective for (1) failing to secure a broader stipulation concerning Felicia Brokenbrough's statement to police and her absence at trial, and/or for failing to seek a bench warrant to secure her presence at trial; (2) retaining an investigator with an alleged conflict of interest; (3) failing to request a limiting instruction regarding other crimes evidence; and (4) failing to produce mitigating evidence during the penalty phase. In this opinion, we resolve one aspect of the first remand claim — whether trial counsel was ineffective for failing to impeach Washington with her alleged bias — solely on the basis of a lack of prejudice. Thus, our assessment properly focuses upon whether these five issues, resolved solely on the basis of prejudice, resulted in cumulative prejudice entitling Appellant to relief.

We have examined Appellant's claims which we dismissed solely on the basis of prejudice and are satisfied that the ineffectiveness claims at issue involve distinct inquiries, and, in any event, even cumulating these claims, we are confident in light of the evidence implicating Appellant in this murder, that the outcome of the trial would have been the same. See id.

The order of the PCRA court is affirmed.[7]

---

[7] Appellant filed a Motion for Leave to Clarify/Correct the Record on October 7, 2014 regarding the alleged misstatement of the PCRA court as to the timing of Washington's statement to police, to which the Commonwealth did not file an answer. We hereby grant Appellant's motion. Further, Appellant attempts to raise further claims which he asserts arose on remand through an Application for Leave to File Supplemental Claims Raised on Remand, filed on August 25, 2014. In his application, Appellant asserts the PCRA court violated his constitutional rights by improperly denying his request, in light of the passing of trial counsel, to call an expert in capital cases to speak to the prevailing norms of capital practice. As we have resolved these issues on grounds to which the expert testimony requested by Appellant would be inapplicable, we hereby dismiss Appellant's application on this basis as moot. Further, Appellant claims that trial counsel's handwritten notes, while authentic, were not properly admitted by the Commonwealth at the remand hearing, and that the PCRA court violated his (continued…)

Messrs. Justice Eakin, Baer and Stevens join the opinion.

Mr. Chief Justice Saylor files a dissenting opinion.

---

(…continued)
constitutional rights in granting the Commonwealth's subsequent post-hearing motion to reopen the record to admit these notes. Appellant argued before the PCRA court that the Commonwealth failed to demonstrate that its motion was timely, that the notes were relevant, or that trial counsel normally kept handwritten notes in his cases. Further, Appellant maintained that the notes were cumulative, and, thus, inadmissible. In admitting the notes, we find no abuse of discretion. Commonwealth v. Montalvo, 986 A.2d 84, 94 (Pa. 2009) (finding the admission of evidence is at the discretion of the court and such determination will not be reversed absent a showing that the trial court clearly abused that discretion). Moreover, we note that Appellant asserts the objectionable notes are cumulative of other notes in the record and so conclude that, even if trial counsel's handwritten notes were improperly admitted into the record, such admission constituted harmless error. See Commonwealth v. Hairston, 84 A.3d 657 671-72 (Pa. 2014). Thus, we hereby deny Appellant's application.