J-S66008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONALD R. HOWARD, | |
| Appellant | No. 1696 WDA 2014 |

Appeal from the PCRA Order of September 12, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000530-2010

BEFORE:  OLSON, STABILE and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 05, 2016**

Appellant, Donald R. Howard, appeals from the order entered on September 12, 2014, dismissing his first petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9141-9546.  Upon review, we affirm.

On direct appeal, we summarized the facts and procedural history of this case as follows:

> On July 5, 2009, Ellen Martin ("Martin") arrived at the home of her paramour, Ray Goodwill ("Goodwill"), which was located on West High Street in Union City, Pennsylvania. On the front door of Goodwill's home, Martin discovered a note stating "When [*sic*] with Jerry. Talk to late[r]." N.T., 2/22/11, at 206, 207. Martin observed that the writing on the note was not in Goodwill's handwriting. When Martin entered the residence, she found Goodwill dead. Goodwill had been bound with yellow rope and covered with blankets on the couch.
>
> Martin told investigators that Goodwill ordinarily kept his wallet in his shirt pocket. Martin also indicated that Goodwill kept a fake million[-]dollar bill in his wallet at all times. The

*Retired Senior Judge assigned to the Superior Court.

wallet had a chain that Goodwill kept attached to his suspenders. At the crime scene, however, investigators found Goodwill's wallet on a dresser near the television set, with the fake million[-]dollar bill missing. The Erie County Coroner estimated Goodwill's time of death as between 10:00 p.m. on July 3, 2009, and 10:00 a.m. on July 4, 2009.

Investigators questioned [Appellant] regarding his whereabouts at the time of Goodwill's death. [Appellant] provided several contradictory statements to investigators. Investigators also discovered that [Appellant] had used a fake million[-]dollar bill in a drug transaction after Goodwill's death. Subsequently, the Pennsylvania State Police arrested [Appellant] and charged him with, *inter alia*, [second-degree murder, theft by unlawful taking, and burglary[1]]. [Appellant] proceeded to a jury trial on November 8, 2010. The trial court declared a mistrial on November 10, 2010, when the jury was unable to reach a verdict. On February 24, 2011, following [Appellant's] re-trial, the jury convicted [Appellant] of [second-degree murder, robbery, theft by unlawful taking and burglary]. The trial court subsequently sentenced [Appellant] to life in prison for his conviction of second[-]degree murder. For his conviction of burglary, the trial court sentenced [Appellant] to a concurrent prison term of two to [10] years. The remaining charges merged at sentencing. [Appellant] filed a direct appeal at 769 WDA 2011. This Court dismissed [Appellant's] appeal. Thereafter, [Appellant] filed a [p]etition for relief pursuant to the [PCRA and the] PCRA court reinstated [Appellant's] direct appeal rights *nunc pro tunc*.

***Commonwealth v. Howard***, 69 A.3d 1281 (Pa. Super. 2013) (unpublished

memorandum). This Court affirmed Appellant's judgment of sentence on

March 4, 2013. ***Id.***

---

[1] 18 Pa.C.S.A. §§ 2502, 3701, 3921, and 3502, respectively.

On February 27, 2014, Appellant filed a *pro se* PCRA petition raising two ineffective assistance of counsel claims, as well as a claim he was denied the right to confront a witness whose testimony was permitted into evidence through a police officer testifying at trial. In his *pro se* PCRA petition, Appellant indicated he did not want counseled representation. On June 5, 2014, the PCRA court granted Appellant's request to amend his PCRA petition. On July 29, 2014, Appellant filed an amended PCRA petition raising five additional claims. On July 29, 2014, the PCRA court held a hearing on Appellant's *pro se* PCRA petitions. At the commencement of that hearing, the PCRA court conducted an on-the-record colloquy pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998) and Pa.R.Crim.P. 121 and determined Appellant validly waived his rule-based right to counsel and permitted him to proceed *pro se*. The PCRA hearing proceeded with testimony from Appellant and trial counsel. On September 12, 2014, the trial court entered an order, and accompanying opinion, dismissing Appellant's claims. This timely, counseled appeal resulted.[2]

_____

[2] Appellant filed a *pro se* notice of appeal on October 13, 2014. On November 5, 2014, Appellant filed a *pro se* concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), as ordered. On November 19, 2014, the PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a), relying upon its rationale in its earlier opinion entered on September 12, 2014. On December 29, 2014, Appellant filed an application for relief with this Court, seeking the appointment of counsel. On January 16, 2015, this Court entered a *per curiam* order remanding the case to determine whether Appellant was entitled to the appointment of counsel. *(Footnote Continued Next Page)*

On appeal, Appellant presents the following issues for our review:

A. Whether the PCRA [c]ourt erred in failing to find that [Appellant] was afforded ineffective assistance of counsel in that trial counsel failed to present exculpatory evidence that the wrong wallet was introduced at trial and that Ellen Martin offered perjured testimony with defense counsel then inadequately conducting cross-examination to demonstrate her patent perjury?

B. Whether the PCRA [c]ourt erred in failing to find that [Appellant] was afforded ineffective assistance of counsel in that defense counsel failed to call Jean Firewick as a defense witness for the purpose of documenting, presenting and displaying a factual foundation to introduce the specimen wallet?

C. Whether the PCRA [c]ourt erred in failing to find that [Appellant] was deprived of a fair trial given he was not allowed to confront Mary Hoffman whose out of court evidence and statements were permitted to come into evidence by and through the testimony of Trooper Keller?

D. Whether the PCRA [c]ourt erred in failing to find that [Appellant's] right to a speedy trial was violated and that

*(Footnote Continued)* ―――――――――

On February 10, 2015, the PCRA court appointed appellate counsel. As further ordered by this Court, appointed counsel filed an amended Rule 1925(b) statement on March 2, 2015. On March 31, 2015, the PCRA court filed a supplemental Rule 1925(a) opinion, relying on its earlier decision and noting "that most of Appellant's issues raised in his Rule 1925(b) statement were waived as undeveloped and not preserved at the evidentiary hearing." PCRA Court Supplemental 1925(a) Opinion, 3/3/2015, at 1. After issuing a revised briefing schedule, the Commonwealth and appointed counsel for Appellant filed timely briefs with this Court. Moreover, Appellant filed a *pro se* appellate brief, as well. We will not consider this filing, however, because Appellant requested appellate counsel and he is not entitled to hybrid representation. ***See Commonwealth v. Spotz***, 99 A.3d 866, 914 (Pa. 2014) ("Pennsylvania has a policy against 'hybrid' representation, that is, we typically do not consider the merits of *pro se* briefs or motions filed by counseled defendants.").

counsel was ineffective in failing to present and preserve that claim?

E. Whether the PCRA [c]ourt erred in failing to find the imposition of an illegal sentence as per 18 Pa.C.S.A. [§] 1102?

F. Whether the PCRA [c]ourt erred in failing to find that [Appellant] was deprived of a fair trial given that the lower [c]ourt rushed the deliberations of the jury because of an impending storm and in furtherance of expediting the jury improperly placed limitations on the duration of closing arguments?

G. Whether the PCRA [c]ourt erred in failing to find that [Appellant's] right of confrontation of the DNA report was abrogated?

H. Whether the PCRA [c]ourt committed legal error and abused its discretion in denying [Appellant's] [m]otion to [a]mend [his] PCRA [petition] submitted on September 2, 2014?

I. Whether the PCRA [c]ourt committed legal error and abused its discretion in finding that all of [Appellant's] PCRA claims were deemed waived for failure to develop those claims during the course of the evidentiary hearing?

Appellant's Brief at 3.

"This Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by evidence of record and is free of legal error." *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa. Super. 2010) (citations omitted). "In evaluating a PCRA court's decision, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial

level." *Id.* "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lewis*, 63 A.3d 1274, 1278 (Pa. Super. 2013) (citation omitted).

Primarily, we note the PCRA court determined, "[a]t the evidentiary hearing, [Appellant] limited his claim to the victim's wallet[,]" as presented in Appellant's first issue on appeal. PCRA Court Opinion, 9/12/2014, at 4. Upon review of the record, we agree. "[F]ailure to present any evidence … during the PCRA hearing [is] fatal to [a] claim." *Commonwealth v. Spotz*, 896 A.2d 1191, 1219 (Pa. 2006). Appellant "had the responsibility of bringing all of his evidence to the PCRA hearing." *Id.* "While the PCRA permits liberal amendment of a petition, it does not extend to forgive a petitioner's failure to present evidence at the PCRA hearing." *Id.*

In presenting his PCRA claims, Appellant initially represented himself *pro se*. In his original *pro se* PCRA petition, Appellant checked a box on the pre-printed PCRA petition form indicating he did not want a lawyer to represent him. PCRA Petition, 2/27/20145, at 7. Thereafter, Appellant amended his petition by adding additional claims, but, again, did not request counsel. At the beginning of the PCRA hearing, the PCRA court conducted a proper colloquy to ensure Appellant wanted to represent himself.[3] *See* N.T.,

_____

[3] "[I]f a post-conviction waiver of counsel is requested by the defendant, the PCRA court must ascertain that "the defendant understands: (1) his right to be represented by counsel; (2) that if he waived this right, he will still be bound by all normal procedural rules; and (3) that many rights and potential
*(Footnote Continued Next Page)*

7/29/2014, at 2-3. The PCRA court was satisfied that Appellant knowingly and voluntarily waived his right to counsel. Subsequently, while Appellant raised multiple issues in both his initial and amended *pro se* PCRA petitions, he only presented evidence on his first issue, as listed above, at the PCRA hearing. The lack of presentation of evidence was fatal to the remainder of Appellant's claims. After dismissal of his petition, Appellant asked this Court to appoint counsel for the purpose of appeal. This subsequent appointment of appellate counsel does not relate back to before the original *pro se* filings and *pro se* representation at the PCRA evidentiary hearing. Thus, we find that Appellant validly waived his right to counsel before the PCRA court and he subsequently failed to introduce evidence or arguments pertaining to the other issues that are now raised on appeal. Therefore, we will only address Appellant's first issue as presented, issue A.

In his first issue presented, Appellant claims trial counsel was ineffective for failing "to present exculpatory evidence that the wrong wallet was introduced at trial." Appellant's Brief at 5. More specifically, Appellant claims, "a black tri-fold wallet" presented at trial "was not the same wallet that the decedent had when he was murdered." *Id.* at 7-8. Appellant contends, "his sister, Jean Firewick, purchased a specimen wallet similar to the decedent's actual wallet in size, color, and dimensions and gave that

*(Footnote Continued)* ————————————————

claims may be permanently lost if not timely asserted. ***Commonwealth v. Stossel***, 17 A.3d 1286, 1289 (Pa. Super. 2011).

specimen wallet" to defense counsel, but counsel "elected not to present this evidence." *Id.* at 7. He claims that the decedent's paramour incorrectly identified the black wallet as the decedent's and that same wallet had Appellant's DNA on it. *Id.* at 8. Thus, Appellant argues he was deprived "of a critical means to call into question the authenticity of the physical evidence in the form of the wallet admitted and further to impeach the credibility of Ellen Martin as to her basic ability to properly identify the decedent's actual wallet." *Id.*

Counsel for Appellant has failed to cite any legal authority to support this issue. Hence, the claim is waived. *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) ("waiver of an issue results when an appellant fails to properly develop an issue or cite to legal authority to support his contention in his appellate brief."); *see also Commonwealth v. Bracey*, 795 A.2d 935, 940 n.4 (Pa. 2001) ("An underdeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to relief."); *see also* Pa.R.A.P. 2119(b). Regardless, this claim is without merit.

In asserting a claim that counsel was ineffective,

[a] PCRA petitioner [must] prove: (1) the underlying legal claim was of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) the petitioner was prejudiced—that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of

the proceedings would have been different. If a petitioner is unable to prove any of these prongs, his claim fails.

Importantly, counsel is presumed to be effective, and a petitioner must overcome that presumption to prove the three [aforementioned] factors.

*Commonwealth v. Simpson*, 112 A.3d 1194, 1197 (Pa. 2015) (internal citations omitted).

Here, the PCRA court determined:

Trial counsel, Garrett Taylor, Esquire, testified that during and after the first trial [(which ended in a mistrial)], [Appellant] never mentioned that the wrong wallet was admitted into evidence. In fact, it was not until the middle of the second trial (and after [the victim's paramour,] Ellen Martin's testimony [and identification of the victim's wallet]) that [Appellant] claimed it was the wrong wallet. [Appellant] was unable to provide counsel with a valid reason for waiting until the middle of the second trial to raise his claim. Therefore, based on the timing of the disclosure and the manner it was presented, Attorney Taylor did not seek to introduce the specimen wallet during the second trial.

Upon review, [the PCRA court] conclude[d] that the specimen wallet was not admissible during the second trial and, therefore, [Appellant's] claim is meritless. Furthermore, [the PCRA court found] that Attorney Taylor, who [the PCRA court found] credible, reasonably believed that the specimen wallet offered no evidentiary value to [Appellant's] defense due to the late disclosure and the fact that it had no positive impact on his defense. Accordingly, Attorney Taylor had a reasonable basis for not calling [Appellant's] sister as a witness or attempting to introduce the specimen wallet through other means.

PCRA Court Opinion, 9/12/2014, at 4-5 (footnotes omitted).

We agree with the PCRA court that the specimen wallet would not have been admissible at trial. Upon review of the record, forensic investigators

found the wallet, which the Commonwealth admitted into evidence at trial, on a dresser near the decedent. N.T., 2/23/2011, at 107, 118-119. Ellen Martin testified at length about the wallet. She was able to identify it because it had a John Deere tractor on it and she had purchased it. N.T., 2/22/2011, at 219. The decedent kept a fake million-dollar bill in the wallet. *Id.* at 217-218. At 2:00 a.m. on July 4, 2009, after the last time the decedent was seen alive, Appellant went to the home of Ann Biggers and attempted to buy crack cocaine with "phony money." N.T., 2/23/2011, at 147-148. Trooper Mark Russo testified that Appellant admitted that he attempted to use a fake million-dollar bill that he obtained from the decedent to purchase drugs. *Id.* at 193. During the course of a single police interview, Appellant gave Trooper Russo three different versions of how he came into possession of the decedent's fake money. *Id.* at 194. Forensics revealed Appellant's DNA was on the wallet that was admitted into evidence. N.T., 2/24/2011, at 21-22. In light of this evidence, Appellant has not demonstrated how the specimen wallet would have been probative, relevant, or admissible. Moreover, counsel had a reasonable basis to not introduce the specimen wallet based upon the timing of Appellant's request. Counsel had no time to investigate the claim and Ellen Martin had already testified. Moreover, Appellant would have known during his first trial that the admitted wallet was not the correct one. His belated attempt to distance himself from the found wallet does not equate to the ineffective assistance of counsel. Here, there is no merit to Appellant's claim and counsel had a

reasonable strategy for not introducing the specimen wallet at trial. Hence, he is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2016