J-S33005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JAMES BEMBRY | : | |
| Appellant | : | No. 3307 EDA 2024 |

Appeal from the PCRA Order Entered November 7, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002772-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JAMES BEMBRY | : | |
| Appellant | : | No. 3308 EDA 2024 |

Appeal from the PCRA Order Entered November 7, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002773-2020

BEFORE:  BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 23, 2025**

James Bembry appeals from the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

This Court summarized the underlying facts as follows in adjudicating Appellant's direct appeal:

On the afternoon of April 12, 2020, Appellant choked and beat his girlfriend, Toni Howard, at her home, located at 3850 Wyalusing

Avenue in Philadelphia, where they both lived. Ms. Howard's cousin, Trenina Black ("the Decedent"), was visiting at the time and told Appellant to stop hitting Ms. Howard. Appellant told her to "mind her own business." Appellant then took Ms. Howard's cell phone and left the house. Ms. Howard also left the home, went next door where John Slade and his wife, Juanita Brooks-Slade (collectively, "the Slades"), lived and borrowed some money. She returned home briefly and then went up the street to Bahia Johnson's home.

Appellant returned to the home shortly thereafter and the Decedent began yelling at Appellant outside the house regarding his abusive behavior toward women. Approximately fifteen minutes later, the Slades overheard the Decedent and Appellant fighting inside the house. Mr. Slade heard the Decedent scream out Ms. Slade's name three times and, immediately thereafter, heard seven loud thumps in succession followed by silence. Approximately ten minutes later, the Slades saw Appellant leave the home with two knives.

Ms. Slade went to Ms. Howard's home, knocked on the door, and, when no one answered, called 911. Ms. Howard returned home when she saw police vehicles parked outside her house. When she entered the home, she saw the [D]ecedent lying unconscious on the living room floor bleeding from her nose. Police officers immediately searched the house for other people and found none. They initially suspected that she had been stabbed somewhere until they found a bloody hammer within a few feet of the Decedent sticking out from underneath the couch. When medics arrived, they removed the Decedent's wig and discovered multiple lacerations on the right side of her head, as well as significant blood and brain tissue contained within the skull cap of the wig. The Decedent died that evening as the result of blunt injuries to her head.

*Commonwealth v. Bembry*, 304 A.3d 749, 2023 WL 5231882, at *1 (Pa.Super. 2023) (non-precedential decision).

The Commonwealth charged Appellant with murder and other crimes at the docket numbers captioned above. He proceeded to a jury trial as to all charges in May 2022. This Court summarized the trial evidence thusly:

- 2 -

The Commonwealth presented testimony from the Slades, the investigating police officers, a medical examiner, a DNA expert, and Ms. Howard. Relevant to the issue of whether it was Appellant who committed the crimes, two officers testified that upon entering the house and seeing the Decedent lying on the floor, they searched the entire home for other people and found no other individuals in the house. [The Commonwealth's expert opined that the DNA recovered from the hammer was a mixture originating from Appellant, the Decedent, and a third unknown individual.]

Ms. Howard testified, *inter alia*, that on the morning of the murder, the only people in the house were Appellant, the Decedent, and herself. She also testified that after seeing the police cars on the street, she returned to her house but when she knocked, no one answered the door. In addition, she testified that she told police that only Appellant had lived at the house with her for the year prior to the murder and that the police told her after searching the home that no one else was there. Ms. Howard also testified that she and her mother were at Ms. Johnson's house on the evening following the murder when Appellant, using Ms. Howard's cell phone, called Ms. Howard's mother and in response to a question posed by her mother, Appellant stated, referring to the Decedent, that "she get what she get."

On cross-examination, Ms. Howard testified that a man named Adel used to live in the house, but he did not have keys and had moved out of the house a couple of weeks before the murder. In response to defense counsel's question "Did you ever have a man named Vincent who came and stayed?" Ms. Ho[ward] responded "yes." She also testified that at the time of trial, Vince[nt] was living in the house.

At the close of the Commonwealth's case on the afternoon of the third day of trial, after the court recessed for lunch, Appellant informed the court that his subpoenaed witness, Ms. Johnson, had not appeared. Although Appellant's counsel had subpoenaed Ms. Johnson to appear on the first day of trial, she did not appear on that day or the next. Appellant's counsel informed the judge that that he and his staff had received inconsistent communications from Ms. Johnson but stated that she had made "certain promises" to appear. Counsel then stated, "If she's here in time I will put her on the stand. If not, I understand the schedule." The court

then delayed the case over the lunch hour to afford Appellant time to secure her appearance.

After Ms. Johnson failed to appear after the lunch break, Appellant asked for a one-day continuance to give him one more day to obtain Ms. Johnson's presence. Appellant did not inform the court that she was an essential witness. The court denied the continuance request, noting, among other things, that at no time did Appellant ask the court to issue a bench warrant despite Ms. Johnson's failure to appear over three days.

Appellant presented testimony from his DNA expert who opined that she, like the Commonwealth's expert, could not exclude Appellant from the DNA mixture found on the handle of the hammer.

*Id*. at *2-3 (cleaned up). From this evidence, the jury found Appellant guilty of first-degree murder, simple assault, and possession of an instrument of crime, and the court sentenced him to life without the possibility of parole.

One of the issues Appellant raised on appeal to this Court was whether the trial court erred or abused its discretion in denying his request for a continuance to secure the appearance of Ms. Johnson. The trial court addressed the matter by opining that Appellant had not asserted Ms. Johnson to be an essential witness, as he failed to offer information about how her testimony would not be cumulative of what the jury had already heard. The court further suggested that it seemed unlikely that Ms. Johnson would appear if a continuance were granted, given her refusal to honor the subpoena. This Court found the reasoning to be supported by the record, stating:

In asking for the continuance, Appellant made a simple request to the court to allow one more day for Ms. Johnson to show up. He never argued that Ms. Johnson was an essential witness to his defense: he never provided the court with an explanation of how

- 4 -

Ms. Johnson would strengthen his case and never explained to the court how Ms. Johnson was a material witness to the murder. Moreover, Appellant never informed the court as to the facts to which Ms. Johnson could testify.

*Id*. at *9 (cleaned up). Perceiving no merit in this or any of Appellant's other issues, this Court affirmed. *Id*.

Appellant's judgment of sentence became final ninety days after our Supreme Court denied his request for discretionary review on February 21, 2024. *See Commonwealth v. Bembry*, 313 A.3d 950 (Pa. 2024). He thereafter timely commenced the instant PCRA proceedings.[1] The PCRA court appointed counsel, who filed an amended petition raising the claim at issue in this appeal.

Specifically, Appellant asserted that trial counsel, Jonathan Strange, Esquire, and Jena Simonds, Esquire, were ineffective in "failing to request a bench warrant for subpoenaed witness [Ms.] Johnson, and to have her held in contempt, as well as being classified as a material witness, for failing to appear in court[.]" Amended PCRA Petition, 9/18/24, at 28-29. Producing an unsigned memorandum ("Appeal Memorandum") purportedly from Attorney Simonds to Karl Morgan, Esquire, who represented Appellant on appeal, he suggests that Ms. Johnson could have testified to the following facts. On the

---

[1] Appellant initially filed a PCRA petition in August 2023, before his judgment of sentence was final. The PCRA court properly dismissed it as premature by order of October 27, 2023. *See*, *e.g.*, *Commonwealth v. Smith*, 244 A.3d 13, 16 (Pa.Super. 2020) ("A PCRA petition may only be filed after an appellant has waived or exhausted his direct appeal rights." (cleaned up)).

day in question, she saw Appellant leave Ms. Howard's house on foot before she crossed the street to Ms. Howard's house. When she knocked, "Vincent" answered the door. Ms. Howard called down from the second floor to report that she was showering and would be out momentarily. Ms. Howard next ran out of the house, strangely wet, and accompanied Ms. Johnson across the street to Ms. Johnson's house to get high in the basement, during which time Ms. Howard was nervous and shaking. After about ten minutes, the two women went outside to find the police on the scene. Ms. Johnson did not see Vincent leave Ms. Howard's house, nor did she witness Appellant return to it at any point. *Id*. at Exhibit A. Critically, Appellant's petition included no certification as to any witness he intended to offer to prove his allegations.

The PCRA court issued notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Therein, the court opined that Appellant did not identify sufficient information to establish that, but for counsel's omissions, Ms. Johnson would have appeared and offered testimony helpful to his defense. Specifically, the court noted the absence of any signed statement from Ms. Johnson detailing her availability and willingness to testify or the substance of the testimony she would have offered. It also highlighted the dearth of any averments as to Appellant's efforts to communicate with her. **See** Rule 907 Notice, 9/26/24, at 2-3. After Appellant filed no response, the PCRA court entered an opinion and order denying the petition.

This timely appeal followed. The PCRA court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and none was filed. The PCRA court resubmitted its earlier opinion for satisfaction of its Rule 1925(a) obligations. Appellant presents the following question for our resolution:

> Whether the PCRA court erred, as Appellant . . . is entitled to PCRA relief, as trial counsels . . . were ineffective, for failing to request a bench warrant for subpoenaed witness [Ms.] Johnson, and to have her held in contempt, as well as being classified as a material witness, for failing to appear in court, as [Ms.] Johnson's testimony would have established that there was another person at the scene of the murder who may have committed the murder, and had the trial counsels requested a bench warrant and to have her held in contempt, and classified as a material witness, [Ms.] Johnson may have ultimately testified, and there is a reasonable probability that with her testimony, the result would have been different?

Appellant's brief at 4.

We begin with the applicable law. This Court reviews the denial of a PCRA petition to determine "whether the findings of the PCRA court are supported by the record and are free from legal error." **Commonwealth v. Howard**, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up). Ultimately, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." **Commonwealth v. Stansbury**, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

Appellant's issue challenges the performance of his trial attorneys. At the outset, we observe that "counsel is presumed to be effective, and a petitioner must overcome that presumption to prove" his entitlement to relief.

- 7 -

*See Commonwealth v. Simpson*, 112 A.3d 1194, 1197 (Pa. 2015). In that regard:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019) (cleaned up). The petitioner's failure to sustain any prong of the test defeats the claim. *See*, *e.g.*, *Commonwealth v. Rivera*, 199 A.3d 365, 374 (Pa. 2018).

Here, Appellant asserts that he is entitled to a new trial based upon trial counsel's failure to secure Ms. Johnson's attendance at trial. Since the PCRA denied the claim based upon the prejudice aspect of the ineffectiveness, we likewise focus our attention there. For allegations of ineffectiveness founded upon an omitted witness, a petitioner must show each of the following to prove the prejudice:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Miller*, 231 A.3d 981, 992 (Pa.Super. 2020) (cleaned up).

The certified record plainly shows that Ms. Johnson existed and was known to Appellant's trial attorneys. We shall assume *arguendo* that she was available and willing to testify at Appellant's trial had her attendance been secured. If we further accept his supposition that Ms. Johnson would testify consistently with trial counsel's hearsay statements as recounted in the Appeal Memorandum, the relief we would grant in this appeal would be to remand for an evidentiary hearing for the PCRA court to assess Ms. Johnson's testimony and decide whether its absence deprived Appellant of a fair trial. If the PCRA court found her credible such that its confidence in the outcome of the trial was shaken, the court would grant his requested relief, namely a new trial at which Ms. Johnson's testimony can be presented to the jury. However, Appellant has not made the requisite proffering to justify our credence of that supposition or his entitlement to relief.

Our General Assembly has enacted the following provisions governing evidentiary hearings for purposes of proving PCRA claims:

(i) Where a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony.

(ii) If a petitioner is unable to obtain the signature of a witness under subparagraph (i), the petitioner shall include a certification, signed by the petitioner or counsel, stating the witness's name, address, date of birth and substance of testimony. In lieu of including the witness's name and address in the certification under this subparagraph, counsel may provide the witness's name and address directly to the Commonwealth. The certification under this subparagraph shall include any documents material to the

witness's testimony and specify the basis of the petitioner's information regarding the witness and the petitioner's efforts to obtain the witness's signature. Nothing in this subparagraph shall be construed to contravene any applicable attorney-client privilege between the petitioner and postconviction counsel.

(iii) Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

42 Pa.C.S. § 9545(d)(1).

Appellant attached neither a signed certification from Ms. Johnson containing the information specified in § 9545(d)(1)(i) nor a certification from Appellant or PCRA counsel providing the requisite information and detailing the efforts to obtain Ms. Johnson's signature. Although the PCRA court cited this deficiency in its Rule 907 notice, Appellant made no effort to correct the defect. *Cf. Commonwealth v. Lippert*, 85 A.3d 1095, 1098 (Pa.Super. 2014)(remanding for the appellant to satisfy § 9545(d)(1) because the PCRA court did not cite the lack of compliance therewith in its Rule 907 notice to afford him the opportunity to amend his petition). Instead, he asks this Court to grant him a new trial based upon the absence of a material witness despite offering no evidence he would be able to secure her testimony for the new trial or that such testimony would be consistent with the unsigned, undated Appeal Memorandum.[2]

_____

[2] Not only has Appellant failed to offer Ms. Johnson's location and verification that she had testimony to offer that was material and helpful to the defense, he has not even represented that Attorney Simonds would testify to authenticate the Appeal Memorandum and its hearsay contents.

Furthermore, as the Commonwealth aptly observes, the information within the Appeal Memorandum is not particularly compelling:

> According to that memorandum, [Ms.] Johnson reported seeing a man named Vincent in the house where the homicide occurred while stopping by to visit [Ms.] Howard. But no one else, including [Ms.] Howard, reported seeing the mysterious "Vincent," and he was not present when the police responded to the scene. Moreover, [Ms.] Johnson's recollection was suspect as she admitted "getting high" shortly afterward. Moreover, [Ms.] Johnson never alleged that "Vincent" had any ill-will toward the victim or motive to harm her. In contrast, [the Slades both] testified at trial that they heard [Appellant] arguing with the victim over his physical abuse immediately before hearing, "seven loud thumps," and that [Appellant] was then seen leaving the house.

> Viewed against this background, [Appellant] could not show a reasonable probability that – even if [Ms.] Johnson could have been located, dragged into court, and coerced into testifying in a manner consistent with the memorandum – the result of the proceedings would have been different.

Commonwealth's brief at 10 (cleaned up).

Overall, from our review of the certified record and his brief, Appellant has not convinced us that the PCRA court erred or abused its discretion in summarily disposing of his petition because he did not give the court any reason to conduct a hearing to allow him to prove his claim. As it stands, there is insufficient basis for us to conclude that Ms. Johnson is a viable defense witness whose testimony would garner a different result for Appellant. Accordingly, we affirm the PCRA court's order denying his petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/23/2025</u>