J-S65017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON P. MAPLE, | |
| Appellant | No. 1919 WDA 2015 |

Appeal from the PCRA Order of November 3, 2015
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0002544-2006
and CP-65-CR-0002545-2006

BEFORE:  LAZARUS, OLSON AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 13, 2017**

Appellant, Jason P. Maple, appeals from the order entered on November 3, 2015 in the Criminal Division of the Court of Common Pleas of Westmoreland County that dismissed his petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9641-9645.  We affirm.

This Court previously authored the following factual background on direct appeal in this matter.

> At approximately 4:00 a.m. on May 30, 2006, William Teck and Patrick Altman were walking along railroad tracks in Manor, Pennsylvania.  Mr. Teck and Mr. Altman had been staying at the residence of Jennifer Vinsek,[1] who was Appellant's girlfriend and

_____

[1] Vinsek was tried separately for her role in the crimes at issue herein.  She was convicted of second degree murder, two counts of robbery, and three counts of conspiracy.


*Retired Senior judge assigned to the Superior Court.

Mr. Altman's cousin. Appellant shot and killed Mr. Teck with a shotgun and then fired his weapon at Mr. Altman. While Mr. Altman was not struck with a bullet, he dropped a bag that he was carrying as he fled the scene.

Appellant's accomplices in the crime included Jennifer Vinsek, Dewayne Shank, Dewayne's brother Nathan Shank, and Ryan Bronowski. Following the shootings, Nathan removed a backpack from Mr. Teck's body, and Appellant retrieved Mr. Altman's abandoned bag. Dewayne, Nathan, and Bronowski testified against Appellant at trial. The Commonwealth witnesses also included Mr. Altman, Amy Kujawa, who was Vinsek's roommate, and Robert Johnson, a friend of Ms. Kujawa and Vinsek.

The motivation for the crimes generated from events that started about one week prior to the shooting on May 23, 2006. At that time, Mr. Johnson inadvertently walked in on Vinsek and Mr. Teck engaged in consensual sexual intercourse at Ms. Kujawa's and Vinsek's residence on 12 B Division Street, Greensburg, Pennsylvania. On Thursday, May 25, 2006, Vinsek left with Appellant to go camping, where they stayed until May 29, 2006. During their camping trip, Vinsek told Appellant that Mr. Teck had assaulted and attempted to rape her.

When Vinsek and Appellant returned to Greensburg on May 29, 2006, they went to Vinsek's apartment, which was in disarray. Vinsek claimed that Mr. Teck and Mr. Altman were responsible for the damage and that they also had stolen items. Vinsek and Appellant immediately tracked down Mr. Teck and Mr. Altman, who were drinking at Clear Waterz Bar in Greensburg, where Ms. Kujawa worked as a bartender. At about 12:30 a.m. on May 30, 2006, Appellant and Vinsek confronted the two men and, at approximately 1:00 a.m., were ejected from Clear Waterz Bar by the owner.

Appellant and Vinsek then returned to 12B Division Street and contacted police to report that a burglary had occurred. Greensburg Police Officers Donald Sarsfield and Kerry Dieter responded to the burglary report. Mr. Johnson was present because he had seen Mr. Teck and Mr. Altman at the apartment during the day of May 29, 2006. Vinsek informed police that Mr. Altman and Mr. Teck burglarized her apartment and that Mr. Teck had attempted to rape her the previous week. In the

presence of Police Officer Sarsfield, Police Officer Dieter, and Mr. Johnson, Appellant threatened to retaliate against Mr. Teck and Mr. Altman.

After Officers Dieter and Sarsfield left Vinsek's apartment, Appellant contacted Dewayne Shank and asked him for assistance in confronting Mr. Teck and Mr. Altman. Appellant told Dewayne to enlist the aid of Nathan Shank and Bronowski and informed the Shank brothers that Mr. Teck had guns, money, and drugs in his backpack, and that he wanted to retaliate against Mr. Teck and Mr. Altman for certain crimes that they had committed against Vinsek. Appellant promised the Shanks that they could keep the guns, money, and drugs in Mr. Teck's possession in return for their assistance.

While Appellant was arranging for help, Mr. Teck and Mr. Altman left Clear Waterz Bar and went to Manor Diner. Vinsek located the two men through Ms. Kujawa. Nathan, Dewayne, and Bronowski drove to Manor and rendezvoused with Appellant and Vinsek. Vinsek then induced Ms. Kujawa to invite Mr. Teck and Mr. Altman to a party at 12B Division Street so that the two victims, who did not have a vehicle, would leave the diner to walk to Greensburg. When the two men left Manor Diner and started out toward Greensburg along the railroad tracks, Appellant followed the two men and fired his shotgun twice at them, killing Mr. Teck.

\* \* \*

After litigating an unsuccessful motion to suppress his two inculpatory remarks, Appellant was convicted at a jury trial. Appellant was convicted of first-degree murder of William Teck, conspiracy to commit homicide, and conspiracy to commit robbery. As to the victim Patrick Altman, Appellant was convicted of attempted homicide, aggravated assault, conspiracy to commit robbery, and robbery. Appellant was acquitted of robbery with respect to Mr. Teck.

*Commonwealth v. Maple*, 11 A.3d 1015 (Pa. Super. 2010) (unpublished

memorandum) at 1-5.

Following the conclusion of direct appeal, Appellant filed the instant PCRA petition on December 31, 2014. By order entered on November 3, 2015, the court denied Appellant's petition. Appellant filed a timely notice of appeal on November 30, 2015. Thereafter, both Appellant and the court complied with Pa.R.A.P. 1925. The matter is now ripe for consideration.

Appellant raises two claims for our review:

Whether trial counsel was ineffective for failing to call an expert witness to testify regarding alcoholism and the impact of alcohol intoxication on cognition and the ability to form the specific intent to kill, in violation of the Sixth Amendment to the Constitution of the United States and Article I, Section 9 of the Pennsylvania Constitution?

Whether trial counsel was ineffective for failing to object to the court's instructions with regard to both the "overt act" requirement and the special interrogatories[, as well as the form of the special interrogatories,] in violation of the Sixth Amendment to the Constitution of the United States and Article I, Section 9 of the Pennsylvania Constitution?

Appellant's Brief at 3 (superfluous capitalization omitted).

"Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations [that are] supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo*." ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015) (*en banc*), *appeal denied*, 123 A.3d 331 (Pa. 2015) (internal citations omitted).

- 4 -

Both of Appellant's claims argue that trial counsel was ineffective. "[T]he Sixth Amendment to the United States Constitution and Article I, [Section] 9 of the Pennsylvania Constitution, [entitle a defendant] to effective counsel. This right is violated where counsel's performance so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Simpson*, 112 A.3d 1194, 1197 (Pa. 2015) (internal quotation marks and citation omitted). "[T]rial counsel is presumed to be effective." *Commonwealth v. Patterson*, 143 A.3d 394, 398 (Pa. Super. 2016) (citation omitted). To prevail on an ineffective assistance of counsel claim, a "petitioner must plead and prove (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner." *Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015) (citation omitted).

In his first issue, Appellant argues that trial counsel was ineffective in failing to call an expert witness to testify about alcoholism and the impact of alcohol intoxication on cognition and the ability of a defendant to form the specific intent to kill. To support this claim, Appellant proffered the testimony of Dr. Mark King, a psychologist. Dr. King interviewed Appellant and his parents about Appellant's history of consuming alcohol, reviewed Appellant's armed services records, and considered Appellant's prior contacts

with law enforcement and concluded, based on this information, that Appellant should be assessed as an alcoholic. Dr. King opined that when an alcoholic consumes alcohol, he encounters significantly more cognitive impairment, loss of judgment, and reduced ability to form intent than a non-alcoholic who consumes alcohol. Based upon his review of Appellant's statements to police, his trial testimony, and his account of alcohol consumption leading up to the shooting, Dr. King concluded that Appellant could not form the specific intent to kill.

Appellant argues that Dr. King was available to testify at trial and that counsel knew or should have been aware of the need for expert testimony on voluntary intoxication to reduce first-degree murder to third-degree murder. *See* 18 Pa.C.S.A. § 308 (evidence of intoxication may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree). Appellant also argues that the absence of expert testimony "to explain if and why an alcoholic may appear to lay observers to be functioning normally when, in reality he [is] immersed in a blackout episode" left the jury confused and more likely to conclude that Appellant was a liar who committed first-degree murder. Appellant's Brief at 36. Appellant therefore maintains that trial counsel was ineffective in failing to call an expert witness to explain the impact of alcohol consumption on his capacity to formulate the specific intent to kill.

> To establish counsel was ineffective for failing to call a witness, appellant must show: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied [appellant] a fair trial.

*Commonwealth v. Thomas*, 44 A.3d 12, 23 (Pa. 2012). "Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness'[s] testimony would have been beneficial or helpful in establishing the asserted defense." *Commonwealth v. Chmiel*, 889 A.2d 501, 546 (Pa. 2005).

Appellant identifies two purposes for the introduction of Dr. King's testimony. First, he argues that the testimony was essential to explain to the jury that his consumption of alcohol caused cognitive impairment that precluded the formation of a specific intent to kill. Second, Appellant argues that Dr. King's testimony was necessary to enable the jury to understand why Appellant may have appeared to be functioning normally to observers when, in fact, he was immersed in a blackout episode which explained his subsequent failure of recall. We reject both proposed uses of Dr. King's testimony.

The certified record refutes Appellant's contentions regarding the need for expert testimony regarding alcohol intoxication and impairment. As the Commonwealth points out, Officers Sarsfield and Dieter, Robert Johnson, Dewayne Shank, Nathan Shank, and Ryan Bronowski all had contact with

Appellant on the night of the shooting and testified that Appellant appeared to be sober.[2]  **See** Commonwealth's Brief at 24-25.  Moreover, Appellant never testified as to the quantity of alcohol he consumed during the relevant time period.  Additionally, Appellant's claim that Dr. King's testimony was needed to explain his memory loss appears contrary to the facts.  Appellant cites the following testimony from Dr. King in support of his claim:

> Well, part of what alcohol does to an alcoholic that it doesn't necessarily do to a non-alcoholic to the same extent is it interferes with the neurotransmission, electrical impulses between neuron [synapses], and it blocks your memory.  So, **[the alcoholic] could use functioning that is rote.  [The alcoholic] could drive a car from the bar to home if [he was] used to it**, and if [he got] lucky not get caught.  But if you had as much to drink and you're not an alcoholic, you're going to weave all over [the] place or kill somebody or the police will stop you.

Appellant's Brief at 19 (emphasis added), *citing* N.T. PCRA, 8/23/13, at 133.

Even if we assumed, for purposes of argument, that Dr. King advanced a plausible theory to explain an alcoholic's memory loss, despite the individual's performance of habitual and routine acts, the proffered opinion does not explain the facts before us.  Here, the evidence showed that Appellant's conduct on the night in question involved planning and deliberation and was not routine and habitual.  To perpetrate the attack on the victims, Appellant recruited the assistance of several other individuals,

_____

[2] Appellant acknowledges that witnesses for the prosecution testified that he did not appear to be intoxicated on the night of the shooting.  **See** Appellant's Brief at 13.

allocated potential spoils to induce the assistance of others, and lured the victims away from a public space and into a more secluded area where they would be vulnerable to an assault and where the likelihood of detection would be reduced. The substantial evidence of planning and premeditation compels us to conclude that Dr. King's testimony would not have helped to establish a voluntary intoxication defense in this case. Hence, Appellant's first claim merits no relief.

Appellant's second issue concerns alleged ineffective assistance of counsel in failing to object to jury instructions and special interrogatories regarding the conspiracy charges. Specifically, Appellant argues that trial counsel was ineffective in failing to object to the court's instructions with respect to the "overt act" requirement. Appellant also raises a related claim that counsel wrongly failed to challenge the court's special interrogatories that directed the jury to specify the overt act undertaken in furtherance of the conspiracy.

By way of background, at criminal information 2545 C 2006, the Commonwealth alleged specific overt acts committed in furtherance of the conspiracy offenses charged against Appellant. At count 2, the Commonwealth alleged that Appellant committed the overt act of firing a shotgun at Mr. Teck. At count 4, the Commonwealth alleged that Appellant committed the overt act of firing a shotgun at Mr. Altman. The jury, however, based its guilty verdicts for the conspiracy counts on different acts.

Appellant attributes the variance between the information and the verdict to the trial court's improper instructions and to the court's improper special interrogatories concerning the consideration and identification of the overt acts supporting the conspiracy charges.[3] Appellant asserts that trial counsel was ineffective in failing to object to the manner and form of the court's jury instructions and special interrogatories.

Criminal informations must be read in a common sense manner and their purpose is to provide the accused with sufficient notice to prepare a defense. *Commonwealth v. Einhorn*, 911 A.2d 960, 978 (Pa. Super. 2006). A variance between the term in an information and the proof at trial is not fatal unless it misleads the defendant, involves an element of surprise that hinders the preparation of a defense, precludes anticipation of the prosecution's proof, or impairs a substantial right. *Commonwealth v. Jones*, 912 A.2d 268, 289 (Pa. 2006). Appellant cites no Pennsylvania case law that addresses the issue of variance relevant to overt acts, and our own efforts have yielded none. The federal courts, however, have held that the prosecution is not limited in its proof at trial to those acts alleged in the

---

[3] Appellant argues that, in charging the jury, the court referred to the overt acts alleged by the Commonwealth but did not make clear that the jury was limited to relying upon those overt acts in support of Appellant's conspiracy convictions. Similarly, Appellant argues that the court's instructions on its special interrogatories failed to specifically direct the jury that it was constrained to rely upon the overt acts alleged in the criminal informations.

information.  ***See United States v. Adamo***, 534 F.2d 31, 38 (3d. Cir. 1976).

Upon review, we discern no basis for relief on this issue.  Appellant contends only that counsel breached his duty to object to the court's instructions and special interrogatories because they supposedly produced a variance between the criminal information and the jury's verdict.  Appellant does not allege, however, that the information misled him at trial, prejudiced his efforts to prepare a defense or anticipate the Commonwealth's proof, or impaired a substantial right.  Moreover, Appellant cites no authority for his claim that the conspiracy charges could only be proved by the specific overt acts alleged in the information.  When properly read in a common sense manner, the information in this case gave Appellant adequate notice of the charges against him.  Under these circumstances, we conclude that counsel cannot be deemed ineffective.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/13/2017