J-S71040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES MCNULTY | : | |
| | : | |
| Appellant | : | No. 717 EDA 2019 |

Appeal from the PCRA Order Entered January 24, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003422-2014

BEFORE:  BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED APRIL 27, 2020**

James McNulty appeals the denial of his request for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. The PCRA court denied McNulty's PCRA petition, concluding that he failed to present any meritorious claims. We affirm.

Following a bench trial, the court found McNulty guilty of 50 counts of sexual abuse child – child pornography; two counts of sexual abuse of children – dissemination of photographs, videotapes, computer depictions and films; and one count of criminal use of communication facility.[1] The trial court sentenced him to aggregate term of four to eight years' incarceration followed by 10 years of reporting probation. We affirmed the judgment of sentence in March 2016; McNulty did not file a petition for allowance of appeal with our

---

[1] 18 Pa.C.S.A. §§ 6312(c), (d), and 7512(a), respectively.

Supreme Court. *See Commonwealth v. McNulty*, 2016 WL 854136 (Pa.Super. filed March 4, 2016).

McNulty filed the instant, timely counseled PCRA petition in February 2017, and the Commonwealth filed a response. The PCRA court held two evidentiary hearings, after which it ordered both parties to file briefs. The PCRA court ultimately denied the petition and this timely appeal followed.

McNulty raises the following claims before this Court:

I.    Did the PCRA [c]ourt err as a matter of law in determining that trial counsel was not ineffective when trial counsel failed to acquire an expert to conduct independent adversarial testing in a case centering on forensic computer evidence?

II.   Did the PCRA [c]ourt err as a matter of law in determining that trial counsel was [not] ineffective in failing to investigate and present witnesses available to testify at trial?

III.  Did the PCRA [c]ourt err in determining counsel was not ineffective for failing to object to inadmissible evidence?

IV.   Did the PCRA [c]ourt err in determining counsel was not ineffective for failing to impeach witnesses?

V.    Did the PCRA [c]ourt err in determining that there was neither a *Brady*[ *v. Maryland*, 373 U.S. 83 (1963)] violation nor possible prosecutorial misconduct?

McNulty's Br. at 4-5 (suggested answers omitted).

We review the denial of a PCRA petition by determining whether the PCRA committed legal error and if its legal conclusions are supported by the record. *See Commonwealth v. Williams*, 950 A.2d 294, 299 (Pa. 2008).

None of McNulty's issues have merit, and we affirm on the basis of the opinion of the PCRA judge, the Honorable Barbara A. McDermott. As Judge McDermott explains, McNulty's first two claims fail because the testimony of the only expert he has identified does not undermine confidence in McNulty's convictions. McNulty's next issue, relating to the best evidence rule, fails because the Commonwealth introduced into evidence exact copies of the files the agents received from McNulty, and the failure to locate such files on McNulty's computers did not render those copies inadmissible. McNulty's impeachment issue lacks merit because we agree with Judge McDermott that McNulty cannot show prejudice. His **Brady** claim fails because he has not shown that the allegedly withheld information was exculpatory, and his claim of prosecutorial misconduct based on the alleged **Brady** violation likewise fails. We thus affirm on the basis of Judge McDermott's well-reasoned opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/27/20

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA     :   CP-51-CR-0003422-2014

             :

             :

             :

v.                    :

             :            **FILED**

             :

JAMES MCNULTY               :       JAN 2 4 2019

**ORDER AND OPINION**          PCRA Unit
                                                      CP Criminal Listings

**McDermott, J.**                                                 **January 24, 2019**

**Procedural History**

On January 7, 2014, the Petitioner, James McNulty, was arrested and charged with two counts of Dissemination of Photos of Child Sex Acts, one count of Criminal Use of Communication Facility, and fifty counts of Possession of Child Pornography. On June 17, 2014, the Petitioner entered into a non-negotiated guilty plea to two counts of Dissemination of Photos of Child Sex Acts, one count of Criminal Use of Communication Facility, and twenty-five counts of Possession of Child Pornography, before the Honorable Ann Butchart. Judge Butchart deferred sentencing until August 14, 2014, for the completion of pre-sentence and mental health reports. On August 14, 2014, the Petitioner filed a Motion to Withdraw his guilty plea, and on the same date, Judge Butchart granted the Petitioner's Motion.

On March 26, 2015, the case was transferred to this Court for trial. After a bench trial the same date, this Court found Petitioner guilty of all charges and revoked bail. On May 28, 2015, after a hearing, this Court determined the Petitioner was not a sexually violent predator. That same day, this Court sentenced Petitioner to concurrent terms of imprisonment of two to four years for both counts of Dissemination of Photo of Child Sex Acts, a consecutive term of

imprisonment of two to four years for Criminal Use of Communication Facility, and one year of probation for ten counts of Possession of Child Pornography, each to run consecutive to the other, for a total sentence of four to eight years of imprisonment followed by ten years of probation. No further penalty was imposed on the forty remaining charges of Possession of Child Pornography.

The Petitioner appealed and on March 4, 2016, the Superior Court affirmed this Court's Judgment of Sentence. The Petitioner did not file a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania.

On June 29, 2016, through retained PCRA counsel Joseph P. Capone, Esq. the Petitioner filed the instant, timely Post-Conviction Relief Act ("PCRA") petition, his first. On July 14, 2016, the Petitioner withdrew his petition. On February 28, 2017, the Petitioner filed a timely, counseled supplemental petition. On May 9, 2017, the Commonwealth filed its response. On July 25, 2017, this Court presided over an evidentiary hearing.[1] On December 15, 2017, the Petitioner sent this Court a letter requesting permission to proceed *pro se.* On December 20, 2017, this Court permitted the Petitioner to proceed *pro se,* and attorney Capone agreed to serve as standby counsel. On January 25, 2018, after the Petitioner requested to proceed *in forma pauperis,* this Court issued an Order allocating funds to secure the retention of Cornerstone Discovery as a Forensic Expert. On July 26, 2018, through newly retained PCRA counsel Brian J. Zeiger, Esq., the Petitioner filed a supplemental PCRA petition.

---

[1] During the July 25, 2017 Evidentiary Hearing, the Petitioner presented Computer Forensic Investigator Rebecca Mercuri as an expert witness. During the hearing, Mercuri revealed that she did not examine the forensic evidence in this case. N.T. 7/25/2017 at 41–42, 63–65. At the conclusion of that hearing, this Court determined that the Petitioner's retained expert's testimony was insufficient to address the issues raised in his petition. The Petitioner elected not to continue employing Mercuri's services.

2

On August 23, 2018, this Court presided over a second evidentiary hearing. At the conclusion of that hearing, this Court ordered the Petitioner and the Commonwealth to submit briefs. On November 24, 2018, after having granted the Petitioner an extension of time to file his brief, the Petitioner submitted his Second Supplement to Petition Under the Post-Conviction Relief Act. On December 19, 2018, the Commonwealth submitted its Answer to Petition for Post-Conviction Relief.[2] On January 4, 2019, the Petitioner filed his answer to the Commonwealth's answer.

## Facts

This Court previously recited the facts of the case as follows:

> On September 15, 2013, Special Agent Duane Tabak of the Pennsylvania Attorney General's Office's Child Predator Section conducted an investigation to identify individuals possessing and sharing child pornography using the BitTorrent file-sharing network.[3] On September 15, 2013, and again on September 18, 2013, Special Agent Tabak made a direct connection to a computer utilizing the IP address 68.82.141.16. This IP address was operating on the BitTorrent Network and was making child pornography publicly available for download. Special Agent Tabak successfully downloaded two video files depicting children, under the age of eighteen years old, engaging in sexual acts.
>
> On October 24, 2013, Special Agent Tabak obtained a court order directing Comcast to release the subscriber information associated with IP address 68.82.141.16 for the dates of September 15 and September 18. On October 28, 2013, Special Agent Tabak received information pursuant to the order indicating that Wang Chang of 743 Watkins Street in Philadelphia was the subscriber to that IP address. On December 16, 2013, Special Agent Tabak prepared a search warrant for 743 Watkins Street.
>
> On December 16, 2013, Agent Kurt Smith, the Philadelphia Regional Supervisor from the Attorney General's Office's Child Predator Section, executed the search warrant on 743 Watkins Street. Agent Smith spoke with the [Petitioner] who confirmed that

---

[2] For purposes of review, this Court considers the Petitioner's Second Supplemental Petition and the Commonwealth's Answer to Petition for Post-Conviction Relief as their briefs encompassing all collateral issues preserved before this Court.

[3] BitTorrent is a file sharing Network that allows users to download and share files with others via the internet. N.T. 3/26/2015 at 39.

3

he and his brother, Justin McNulty, lived at 743 Watkins Street.[4] During the search of the residence, Agent Daniel Block testified to overhearing the [Petitioner] tell his brother the following statements: "I've downloaded some extreme stuff, but I always thought they were adults;" "No matter what, they're going to find something illegal;" "This is horrible shit. They got all my hard drives. How am I going to show my face around my kids now;" "I didn't get to say good-bye to my kids and my ass is getting locked up;" and "They are taking my IBM. Fuck."

Law enforcement recovered seventy-five computer related items from the McNulty residence including multiple computers, loose hard drives, and other media storage devices. Law enforcement also seized a photo ID, a vehicle title, and other paperwork belonging to the [Petitioner] on the computer desk in the first-floor dining room.[5] There was no documentation pertaining to Justin McNulty in the vicinity of the computers. From what Agent Smith believed to be Justin McNulty's room, agents recovered a Comcast bill dated September 12, 2013, that was addressed to Wang Chang. From what Agent Smith believed to be the [Petitioner]'s bedroom, agents recovered one Apple computer, one Apple Mac computer tower and one external storage device. When Agent Smith informed the [Petitioner] that the search was related to child pornography, the [Petitioner] responded, "people get twenty years for downloading."

On November 24, 2014, Agent Braden Cook of the Attorney General's Forensic Unit examined the items seized from the [Petitioner]'s residence. According to Agent Cook, nine items contained child pornography. An examination of an eMachines computer tower confiscated from the dining room of the McNulty residence revealed a user profile marked "JAMES." Under this user profile, Agent Cook discovered three child pornography videos and eighty-six Torrent files, indicative of child pornography, that were downloaded on January 31, 2011, and stored under the folder marked "Vuze."[6]

From an Apple Mac Minicomputer, seized from the dining room, Agent Cook recovered 508 child pornography images under the user profile marked "FirstLast." Also under this user profile, Agent Cook discovered four business documents belonging to the [Petitioner] including: a rejection letter from the Patent and Trademark Office addressed to the [Petitioner] and dated May 14, 2013; a letter addressed to Mr. Kurt Hughes from the [Petitioner];

---

[4] Agent Smith later confirmed the Petitioner and Justin McNulty's addresses through Pa. Justice Network. N.T. 3/26/2015 at 87.

[5] The computers were found in the first-floor main room which combined both the living room and dining room. N.T. 3/26/2015 at 93-94.

[6] Vuze is a file-sharing program accessible on the BitTorrent network that allows users to share electronic files. N.T. 3/26/2015 at 38.

4

an amendment name change document; and articles of amendment for "Holoco Incorporated," listing the [Petitioner] as Chairman and sole director. There was no relevant information discovered under the user profiles marked "GateVistaJames" and "VaioPrintJames."

Agent Cook examined a Compaq Presario C500 laptop computer, also confiscated from the dining room. There were two non-default user profiles associated with this laptop computer, one marked "JAMES" and the other marked "JUSTIN." Agent Cook retrieved twenty-four link files that were indicative of child pornography stored under the user profile "JAMES." Agent Cook did not discover any child pornography stored under the user profile "JUSTIN."

An examination of an Apple Power Mac G5 computer tower that agents seized from the [Petitioner]'s bedroom revealed a user profile marked "JAMES." Under this user profile, Agent Cook discovered a Vuze file-sharing program and 843 child pornographic pictures that were downloaded on August 3, 2009.

Agent Cook examined an Apple iMac computer, also recovered from the [Petitioner]'s bedroom, which revealed one child pornographic picture downloaded on January 12, 2012, and stored under a non-default user profile marked "USER." Elsewhere on this computer, Agent Cook discovered the two videos that Special Agent Tabak successfully downloaded on September 15, 2013 and September 18, 2013. Special Agent Tabak determined that both videos were searched and downloaded on September 14, 2013, and further determined that both videos were viewed on this computer. In an attempt to identify the user of this profile, Agent Cook examined other files located on this computer and found a video of the [Petitioner] with the file name "MeInCoat" and a picture of the [Petitioner] with the file name "FacePic."

On December 16, 2013, law enforcement issued an arrest warrant for the [Petitioner]. On January 7, 2014, the [Petitioner] surrendered.

Justin McNulty, the [Petitioner]'s brother, testified on the [Petitioner]'s behalf that Justin McNulty operated a computer repair business in his home. Justin McNulty recalled working on four customers' computers on December 16, 2013, and indicated that most of the computers confiscated from the first floor belonged to his customers. According to Justin McNulty, his employee, James Smith, who had been installing operating systems on the customers' computers since 2002, was responsible for putting "JAMES" as the primary default account on these computers. Justin McNulty testified that the [Petitioner] carried his own laptop around with him and had used a separate Wi-Fi system from Clear Channel since 2005. Justin McNulty and his neighbor Wang Chang agreed to put

the cable Wi-Fi service from Comcast in Wang Chang's name, creating an open network for both parties to use.

Justin McNulty also presented alibi evidence that he picked up the [Petitioner] on Tuesday, September 10, 2013, from his probation meeting and transported him to Kelly Baran's residence in New Jersey. He believed the [Petitioner] remained in New Jersey until Friday, September 13, 2013, at which time he picked up the [Petitioner] and drove him to his residence at 743 Watkins Street in Philadelphia, where the [Petitioner] remained for the weekend. Justin McNulty then drove the [Petitioner] back to New Jersey on Sunday, September 15, 2013, where the [Petitioner] remained until September 20, 2013.

Kelly Baran, the mother of the [Petitioner]'s children, testified on behalf of the defense. Baran testified that in September of 2013, the [Petitioner] would stay with her at her home located in National Park, New Jersey and with his brother in Philadelphia. Baran stated that the [Petitioner] was in New Jersey the week before his daughter's birthday on September 20, 2013, and departed the night of September 20, 2013.

The [Petitioner] testified to being in New Jersey on the 15th and 18th of September, 2013. The [Petitioner] admitted to using the computers agents confiscated from 743 Watkins Street, but specified that he worked primarily on a computer that he kept in his possession. The [Petitioner] denied downloading any child pornography on any computers and stated that he never set up the user profile "JAMES."

1925(a) Opinion at *2–6 (Pa. Cm. Pls. August 7, 2015).

During the August 8, 2018 evidentiary hearing, Jason Silva, Director of Operations with Cornerstone Discovery and an expert in digital forensics, testified that he reviewed all forensic information from two computers recovered from the Petitioner's residence, an iMac and a G5. After reviewing the Commonwealth's forensic reports and attachments, Silva performed keyword searches and forensic artifacts to determine whether the Petitioner's computer was used to upload files containing pornographic imagery to the Commonwealth's agent. Through a forensic bootleg process, Silva was able to examine an unaltered digital replica of the computer, which preserves the integrity of any evidence found within. Silva's keyword search showed 6,466 matches, consistent with the Commonwealth's analysis. N.T. 8/23/2018 at 15–25.

6

Based on his review of the forensic evidence, Silva conceded that the Petitioner's iMac computer was used to download the pornographic files via the peer-to-peer file sharing program Vuze, and the files themselves were viewed through either a Quicktime Media Player or VLC program. Silva further testified that he was unable to recover any metadata or digital artifacts indicating that the files in question were ever stored on the computer. Silva was similarly unable to recover any evidence showing that the files were uploaded from the iMac to the Commonwealth's case agent. N.T. 8/23/2018 at 25–35.

On cross examination, Silva noted that, while he did not find the files themselves on the iMac, he did find text fragments and a portion of a log file to support the idea that the files were downloaded, and further information indicated that the files were viewed on the iMac on September 14, 2013, one and four days prior to upload to the Commonwealth's computer on September 15, and 18, 2013. While the files were downloaded to the iMac, Silva opined that it was possible for the files to either have been deleted or stored elsewhere after download. Silva stated that he did not perform an independent analysis of the IP address the Commonwealth identified as performing the upload. Silva clarified that his analysis did not uncover direct evidence of an upload, but the absence of such evidence did not preclude the upload from occurring. Silva testified that he did not discover any evidence that would contradict the Commonwealth's evidence that pornographic images were uploaded onto Agent Tabak's computer on the specified dates. N.T. 8/23/2018 at 43–65.

Agent Cook testified at the hearing, and provided consistent testimony to what he presented at trial. Agent Cook explained that the Vuze file creates a temporary file location for the purpose of download, which may contain all or part of the file. Upon completion of the download, users may store the files in many locations, including folders, internal hard drives,

7

thumb drives, and external hard drives. Files downloaded on the BitTorrent Network permit uses to download parts of the file from multiple locations to later reassemble the full file on the user's computer. In order to identify the Petitioner, the Agent Tabak and the Attorney General's office employed a program that isolates a single user uploading a file available for sharing, permitting them to upload the entire file from that user. N.T. 8/23/2018 at 78–81.

Agent Cook reiterated that his forensic analysis prior to trial revealed that Agent Tabak downloaded the offending files from the iMac recovered from the Petitioner's home. His investigation further revealed the IP address from where the files were obtained, and that the iMac was located at that IP address. Cook also clarified that, in his original report and at trial, that he never recovered direct evidence of uploading from the iMac via code or fragments, and that his conclusion was based on the keyword analysis and the iMac's location on the IP address. Because he did not find direct evidence of upload on the computer, the absence of such evidence was not included in his report, as the report could not include information that he failed to discover. N.T. 8/23/2018 82–86.

**Discussion**

In his post-evidentiary hearing Second Supplemental Petition, the Petitioner raises seven issues for review, alleging that trial counsel was ineffective for failing to: (1) hire an expert witness to conduct adversarial testing; (2) investigate witnesses available to testify at trial; (3) object to inadmissible evidence; and, (4) impeach Commonwealth witnesses. The Petitioner further alleges that the prosecutor committed (5) misconduct and (6) violated *Brady v. Maryland*, 373 U.S. 83 (1963).

To warrant relief based on an ineffectiveness claim, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining

8

process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Bardo*, 105 A.3d 678, 684 (Pa. 2014); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed to have rendered effective assistance. *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (*citing Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117 (Pa. 2012)).

To overcome the presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court of Pennsylvania has applied the *Strickland* test by looking to three elements, whether (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). If a claim fails under any necessary element of the *Pierce* test, the court may proceed to that element first. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195–1196 (Pa. 2011). Counsel will not be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Rivera*, 108 A.3d 779, 789 (Pa. 2014) (*citing Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006)).

The Petitioner avers that trial counsel was ineffective for failing to call an expert witness to testify at trial or to conduct adversarial testing of the seized forensic computer evidence. Although the Petitioner does not frame the two claims as such, he is effectively arguing for relief in the form of after-discovered exculpatory evidence in the form of Silva's expert testimony. When challenging trial counsel's failure to produce expert testimony, the petitioner must articulate what evidence was available and identify the witness who was willing to offer such evidence. *Commonwealth v. Luster*, 71 A.3d 1029, 1047 (Pa. Super. 2013) (*citing Commonwealth v. Bryant*, 855 A.2d 726, 745 (Pa. 2004)). At a minimum, a petitioner must also

9

show how the uncalled witness' testimony would have been beneficial under the circumstances of the case. *See Sneed, supra.*

To prevail on an after-discovered evidence claim for relief, a Petitioner must prove that: (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and, (4) it would likely compel a different verdict. *Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017) (*citing Commonwealth v. D'Amato*, 856 A.2d 806, 823 (Pa. 2004)).

The Petitioner's argument is two pronged. First, the Petitioner alleges that, had trial counsel conducted a proper investigation of additional witnesses and discovery, he would have discovered that no evidence of that any illicit images had been identified, selected, opened, or copied by the Petitioner using the seized computers. He similarly argues that trial counsel would have discovered no evidence of computer usage activity by the Petitioner, but would have discovered computer usage activity by other persons. Second, the Petitioner claims that, had trial counsel hired an expert to conduct adversarial testing, he would have discovered exculpatory evidence demonstrating that the images and videos depicting child pornography were not uploaded from the Petitioner's computer. To support this claim, the Petitioner presents testimony from computer forensic expert Jason Silva, who conducted an independent analysis of the computers seized from the Petitioner's home. During the August 23, 2018 evidentiary hearing, Silva testified he was unable to discover any digital artifacts indicating that the seized pornographic files were uploaded from the iMac computer. The Petitioner appears to argue that this testimony alone exonerates him

10

Silva's testimony, when viewed in its totality, however, is insufficient to compel a different verdict in this matter. While Silva opined that the iMac computer bore no evidence indicating that the files in question were uploaded from it, he further testified that the absence of such direct evidence did not preclude the upload from occurring. In fact, Silva testified that that the Commonwealth's conclusion with respect to the uploading of files was reasonable.

At trial and again during the evidentiary hearing, Agent Cook described the process of how the Commonwealth obtained said files from the Petitioner using a peer-to-peer network transmission. When uploading the pornographic files from the Petitioner's computer, the Commonwealth used a program that isolated uploader's IP address, such that all of the data transferred to the Commonwealth came from a single user employing that IP address. Upon search of the Petitioner's home, the Commonwealth recovered the Petitioner's iMac computer, which was located at the same IP address used to upload the offending files. Silva determined that Cook's conclusion was reasonable and did not challenge it. The Petitioner failed to present any evidence to challenge this evidence.

Moreover, Silva agreed with the Commonwealth's and this Court's conclusion that the Petitioner downloaded and viewed pornographic images and videos depicting children. Metadata associated with the files were located on the hard drive indicated that the files were downloaded and viewed by a user. Circumstantial evidence including an image of the Petitioner saved under the offending username identified the Petitioner as the user in question. The fact that the files in question were not physically stored on the computer does not contradict these conclusions, as nothing presented in Silva's testimony or within the Petitioner's pleadings precluded the possibility that the files were saved externally or stored as temporary files.

11

Ultimately, Cornerstone's analysis failed to unearth any additional evidence from the computers they examined, exculpatory or otherwise. The absence of evidence of the files having been stored on the hard drive does not preclude the Commonwealth's conclusion, as presented at trial, that the Petitioner downloaded and viewed pornographic images on that computer, and that those files were later transferred to a Commonwealth representative. Had trial counsel secured testimony from an expert who conducted adversarial testing akin to Silva's, the Commonwealth's conclusions concerning the Petitioner's download of child pornography, and his eventual transfer of those files to a Commonwealth agent, would remain unsullied. Accordingly, the fails to demonstrate that he has secured exculpatory evidence, or that trial counsel was ineffective for secure an expert or conduct adversarial testing.

The Petitioner next claims that trial counsel was ineffective for failing to investigate and present a witness he had available for trial. To demonstrate the arguable merit of a claim that trial counsel was ineffective for failing to present additional witnesses, the Petitioner must establish the existence and availability of the witnesses, counsel's actual awareness, or duty to know of the witnesses, the willingness and ability of the witnesses to cooperate and appear of the Petitioner's behalf, and the necessity for the proposed testimony in order to avoid prejudice. *Commonwealth v. Williams*, 141 A.3d 440, 460 (Pa. 2016); *Commonwealth v. Gibson*, 951 A.2d 1110, 1133–1134 (Pa. 2008). A showing of prejudice requires the Petitioner to show how an uncalled witness' testimony would have been beneficial under the circumstances of the case, or how such testimony would have been beneficial to the defense. *Commonwealth v. Sneed*, 45 A.3d 1096, 1109 (Pa. 2012) (*citing Gibson*, 951 A.2d at 1134; *Commonwealth v. Auker*, 681 A.2d 1305, 1319 (Pa. 1996)).

Moments before trial, the Petitioner informed this Court that he had retained an expert witness to investigate the Commonwealth's forensic evidence. However, the Petitioner fails to identify what expert, if any, he retained. Immediately after the Petitioner claimed he secured an expert, trial counsel informed this Court that, despite meeting with the Petitioner multiple times in anticipation of trial, the Petitioner never requested that an expert be retained.

As trial counsel said during the original trial, the Petitioner failed to furnish the identity of the witness, that counsel was not made aware of the witness' existence until the Petitioner mentioned retaining an expert in open court, and during no point of their multiple preparation sessions before trial did the Petitioner mention the retention of an expert. N.T. 3/26/20015 at 20–24.

The Petitioner's assertion that he had retained an expert for trial is wholly incredible. Not only did the Petitioner fail to name the expert he had allegedly retained, he also failed to bring the expert to Court on the date of his trial. Although the Petitioner had been preparing for trial for more than one year, and was granted a continuance four months prior to the trial date, he made no mention of retaining an expert witness until mere moments before trial. This Court, therefore, has no reason reasonable basis to conclude that trial counsel was aware or should have been aware of the existence of an expert witness at any point before the trial date. For that reason alone, the Petitioner's claim fails.

It is clear from the trial record that the Petitioner may have disagreed with trial counsel concerning strategy in the instant matter, and the Petitioner requested a continuance to prepare the case with an expert that he claimed to have retained. Nonetheless, that disagreement is of little consequence to this Court. On collateral review, this Court permitted the Petitioner to secure two experts to review the Commonwealth's evidence. As stated above, even after a

13

thorough review of the forensic evidence seized in this case, a competent expert was unable to provide evidence that was sufficient to overturn the verdict. Regardless of whether he actually retained an expert on the eve of trial, the Petitioner still fails to demonstrate how an expert's testimony would have been beneficial to his defense. Ultimately, the Petitioner fails to demonstrate prejudice, and his claim fails.

The Petitioner next avers that original copies of the alleged video evidence were not found on the computer recovered from the Petitioner's home, rendering the video inadmissible under PA.R.E. 1002 (the Best Evidence Rule). Accordingly, he argues that trial counsel was ineffective for failing to object to the admission of the video and photographic evidence submitted to this Court, as the specific videos and photographs were not retrieved from the Petitioner's computer.

The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling will not be disturbed unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill will, or such lack of support to be clearly erroneous. *Commonwealth v. Strafford*, 194 A.3d 168, 176 (Pa. Super. 2018) (*citing Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013)).

The best evidence rule provides that an original writing, recording, or photograph is required in order to prove its content. Pa.R.E. 1002. The best evidence rule applies where the contents of the item in question must be proven to make a case. *Commonwealth v. Janda*, 14 A.3d 147, 161 –162 (Pa. Super. 2011). Traditionally, the best evidence rule applied only to writings, but where recordings and photographs are the only evidence of a transaction, such evidence is dispositive, especially in cases involving matters such as copyright infringement,

14

defamation, pornography, and invasion of privacy. Pa.R.E. 1002 *Comment*; *Commonwealth v. Green*, 162 A.3d 509, 517 (Pa. Super. 2017).

For electronically stored information, "original" means any printout, or other output readable by sight, if it accurately reflects the information. Pa.R.E. 1001(d). The best evidence rule was designed to guard against testimony about the content of physical evidence when the original evidence has not been produced or admitted. *Green*, 162 A.3d at 518 (*citing Commonwealth v. Lewis*, 623 A.2d 355 (Pa. 1993).

The Petitioner appears to argue that, because the files were not electronically stored on the seized computers, it is impossible for the Commonwealth to furnish an original copy of the video or photograph evidence used to convict him. The Petitioner's argument is without merit. With respect to the images that were recovered, the Commonwealth submitted exact bit by bit digital copies of the files that they received from the Petitioner. The presence of such files on the Petitioner's hard drive is thus irrelevant to the analysis, the Commonwealth received electronic evidence, and submitted an identical representation of that evidence to this Court during trial. This Court did not merely consider testimony concerning video or photographic evidence, the files themselves were submitted as evidence at trial and viewed by this Court. Under the current legal apparatus, such copies are deemed original for evidentiary purposes.

The Petitioner alleges that trial counsel was ineffective for failing to impeach OAG Tabak concerning his testimony that the images and videos in question were discovered on the Petitioner's computer. A failure to impeach a key witness may be considered ineffectiveness in the absence of a reasonable strategic basis for not impeaching. *Commonwealth v. Treiber*, 121 A.3d 435, 456 (Pa. 2015) (*citing Commonwealth v. Small*, 980 A.2d 549, 565 (Pa. 2009)). In order to prove that counsel was ineffective for failing to impeach a witness, a petitioner must

15

satisfy the three-pronged test set forth in *Pierce*. *Commonwealth v. Simpson*, 112 A.3d 1194, 1197–1198 (Pa. 2015).

The Commonwealth concedes that OAG Tabak misspoke when he stated that, to his understanding, two files were found to be stored on the Petitioner's computer. However, OAG Tabak later testified that it was merely his understanding, and that the issue of fact would be clarified by Agent Cook, who actually examined the Petitioner's computer. During his testimony, Agent Cook described the evidence of uploaded files as "text fragments" which did not show the data and time that the program was actually executed, but only that the text fragments were actually discovered on the computer. Accordingly, no such misrepresentation occurred, Tabak qualified his testimony by stating that he did not have personal knowledge of whether the files were actually discovered on the computer, a qualification that was clarified by Agent Cook's undisputed testimony and findings.

The Petitioner fails to demonstrate prejudice, as any discrepancy between Agents Tabak's and Cook's testimony was minimal and did not implicate the truthfulness of Agent Tabak's testimony. At trial, Agent Tabak stated that he believed the electronic files were recovered from the Petitioner's computer:

> **BY MR. DeSIPIO:**
> Q. Were the two files shown in court today found in the residence of 743 Watkins Street?
> [AGENT TABAK:] A. My understanding is they were.
> Q. They what?
> A. They were.
> Q. It's your understanding they were?
> A. They were found on a computer within that residence.
> Q. Which one?
> A. That will be a question for the computer forensics specialist.
> He's prepared to testify to that.

N.T. 3/26/2015 at 70–71.

16

Agent Tabak immediately qualified his misstatement by informing counsel and this Court that Agent Cook was better suited to testify on what was discovered in the Petitioner's home. Agent Tabak did not examine the evidence recovered from the apartment nor did he participate in the search of the apartment.

Almost immediately after Agent Tabak concluded his testimony, Agent Cook testified that he examined all forensic evidence recovered from the Petitioner's computer. During his testimony, he stated that he did not find the physical files containing child pornography within the Petitioner's computer. Rather, Agent Cook testified that he discovered metadata on the computer which indicated that a user of the iMac computer downloaded and viewed the pornographic images on the computer in question. Agent Cook further testified that circumstantial evidence, such as photos of the Petitioner saved to the profile associated with that username entitled "MeinCoat" and "Facepic" identified the Petitioner as the user of that profile.

At no point did Agent Cook testify that images of child pornography were found on the computer. Instead, the images that the Petitioner seeks to challenge were recovered by the Commonwealth after connecting with the Petitioner's computer via a peer-to-peer network and isolating his IP address to ensure that the files were transmitted from the Petitioner's computer alone. Had trial counsel attempted to impeach Agent Tabak on his misstatement, the outcome of the trial would have remained the same, as any contradiction was cured by Agent Cook's testimony.

The Petitioner alleges that the Commonwealth deliberately withheld an exhaustive amount of discovery materials that, if provided to counsel before trial, could have been used to impeach Commonwealth witnesses. Specifically, the Petitioner lists fifteen examples of allegedly outstanding discovery material, including: (1) all evidence relating to the remote

17

download performed by Agent Tabak, notes taken by OAG Agents after they spoke to the Petitioner on December 12, 2013; (2) results of a JNET Search on the Petitioner's residence; (3) list of all law enforcement personnel who participated in the search of the Petitioner's residence; (4) all artifacts and reports collected from a preview of the Petitioner's computers from 12/16/2013; (5) all 24 attachments to Agent Cook's forensic report; (6) contents of a DVD listed in Agent Cook's forensic report; (7) forensic copies of all media and metadata created by law enforcement at the time of the execution of the warrant; (8) the PARS and CFU reports associated with the case; (9) several exhibits admitted at trial; (10) all impounded evidence recovered via search warrant; (11) all other impounded evidence not included in the search warrant inventory; (12) results of all keyword searches; (13) chain of custody documentation for all impounded evidence; (14) the Petitioner's notice of appeal; and (15) the Petitioner's 1925(b) Statement.

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and subsequent law, a prosecutor has an obligation to disclose all exculpatory information material to the guild or punishment of an accused, including evidence of an impeachment nature. *Commonwealth v. Ovalles*, 144 A.3d 957, 965 (Pa. Super. 2016) (*citing Commonwealth v. Roney*, 79 A.3d 595, 607–608 (Pa. 2013)). To establish a *Brady* violation, a petitioner must prove that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. *Id.* (*citing Commonwealth v.* Hutchinson, 25 A.3d 277, 310 (Pa. 2011)). Favorable evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* (*citing Commonwealth v. Paddy*, 15 A.3d 431, 450 (Pa. 2011)).

*Brady* does not require the disclosure of non-exculpatory information or information that might merely form the groundwork of possible defenses. *Id.* Prosecutors are not required to disclose every fruitless lead, rather the duty to disclose is limited to the information in possession of the government bringing the prosecution, including exculpatory evidence. *Id. (citing Commonwealth v. Puksar*, 951 A.2d 267, 283 (Pa. 2008)). The Commonwealth's *Brady* obligation does not extend to information that is not in its possession. *Commonwealth v. Santos* 176 A.3d 877, 883 (Pa. Super. 2017) (*citing Roney*, 79 A.3d at 610.)

If the allegedly withheld evidence is not material for *Brady* purposes, then the failure to obtain that evidence does not result in prejudice for ineffectiveness purposes. *Commonwealth v. Weiss*, 81 A.3d 767, 791 n. 13 (Pa. 2013) (*citing Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality to warrant relief. *Id.* (*citing Commonwealth v. Miller*, 987 A.2d 638, 655 (Pa. 2009)).

The Petitioner fails to demonstrate that the above evidence was withheld by the prosecution in anticipation of trial, that any of the above information contains any exculpatory evidence, or even that such information is not currently in his possession. The Petitioner's *Brady* claim is a classic request for a fishing expedition to search for possible exculpatory evidence, only it's masquerading as a sixth amendment due process claim. The Petitioner fails to allege how any of the evidence he listed is exculpatory or material. For that reason, his *Brady* claim fails.

The Petitioner finally alleges that the prosecutor's failure to disclose *Brady* materials constitutes prosecutorial misconduct. The proper *Brady* inquiry asks what course the defense and the trial would have taken at trial had the defense not been misled by the prosecutor, and

what impact the misconduct had on trial counsel preparation and presentation of the case. *Weiss*, 81 A.3d at 810 (Castille, J., concurring) (*citing United States v. Bagley*, 473 U.S. 667, 683 (1985)).

To succeed on a claim of ineffective assistance of counsel based on trial counsel's failure to object to prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Sixth Amendment right to fair trial. *Commonwealth v. Busanet*, 54 A.3d 35, 50 (Pa. 2012) (*citing Commonwealth v. Hanible*, 30 A.3d 426, 464–465 (Pa. 2011))

Because the Petitioner failed to establish that any *Brady* material was withheld from counsel leading up to trial, his attendant prosecutorial misconduct claim must also fail.

The Petitioner has failed to raise an issue or uncover any exculpatory evidence to demonstrate ineffective assistance from trial counsel. For the foregoing reasons, the instant petition is DENIED. The Petitioner is hereby notified that he has thirty (30) days from the date of this Order and Opinion to file an appeal with the Superior Court.

BY THE COURT

_____
Barbara A. McDermott, J.

20

*Commonwealth v. James McNulty,* CP-51-CR-0003422-2014

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Carson B. Morris, Esq.
PA Office of Attorney General
Strawberry Square
Floor 16
Harrisburg, PA 17120

**Type of Service:**          **First-Class Mail**

Brian J. Zeiger, Esq.
Levin & Zeiger, LLP
1500 John F. Kennedy Boulevard
Suite 620
Philadelphia, PA 19102

**Type of Service:**          **First-Class Mail**

James McNulty
MB1420
SCI Waymart
P.O. Box 256, Route #6
Waymart, PA 18472

**Type of Service:**          **Certified Mail**

Dated: January 24, 2019

**Joseph Duffy**
**Judicial Clerk to the**
**Honorable Barbara A. McDermott**